LINK: 26, 29, 32, 35, 36

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CHILDREN'S HOSPITAL & MEDICAL CENTER FOUNDATION OF OMAHA, et al.,

Plaintiff,

v.

COUNTRYWIDE FINANCIAL CORPORATION, et al.

Defendants.

Case No. CV-11-02056-MRP-MAN

**ORDER RE MOTIONS TO DISMISS THE COMPLAINT**

## I. INTRODUCTION & BACKGROUND

This case is one of several related securities actions before this Court involving Countrywide Financial Corporation ("Countrywide"),[1] the former management of Countrywide, and its former auditor KPMG. This particular action is one of several opt-out suits filed by members of the class in *In re Countrywide Fin. Corp. Sec. Litig.*, CV-07-05295-MRP (MANx) (the "*Pappas*" suit or the "class action") that opted out of the settlement in that case. Familiarity with the long and complex procedural history of *Pappas* is assumed for purposes of this order. Plaintiffs in this case ("Plaintiffs") are a group of investors who purchased Countrywide common stock between March 12, 2004 and the end of November, 2007.[2] Plaintiffs' opt-out complaint (the "Complaint") was filed on March 10, 2011. ECF No. 1. The Complaint includes causes of action under §§ 10(b) and 20(a) of the Exchange Act that were present in the original *Pappas* action. In addition, the Complaint adds a cause of action under § 18 of the Exchange Act and state law causes of action for common law fraud and negligent misrepresentation. All defendants (collectively "Defendants") have moved to dismiss the Complaint on various grounds. Mtns. to Dismiss, ECF Nos. 26, 30, 32, 35, 36. The issues

---

[1] On July 1, 2008, Countrywide completed a forward triangular merger into a subsidiary of Bank of America called Red Oak Merger Corporation ("Red Oak"). In the transaction, Countrywide shareholders received shares of BofA in exchange for their Countrywide shares. Red Oak was then renamed Countrywide Financial Corporation. Countrywide Fin. Corp., Form 10-Q (Aug. 11, 2008). The merger postdates the class period and the allegations in the complaint. Unless required by context, "Countrywide," as used in this Order, refers to the entity as constituted before the merger.

[2] The Plaintiffs are Children's Hospital & Medical Center Foundation of Omaha, Hastings College Foundation, Peter Kiewit Foundation, Weitz Value Fund, Weitz Partners Value Fund, Weitz Hickory Fund, Weitz Balanced Fund, Research Fund, Partners III Opportunity Fund, and Heider Weitz Partnership.

have been fully briefed and the Court heard extensive oral argument on August 8, 2011. After careful consideration, the Court decides as follows:

The state law claims alleged in Counts III, IV, and V are time-barred under the relevant statutes of limitations. The Court therefore **GRANTS** Defendants' motions to dismiss Counts III, IV, and V **WITH PREJUDICE**. Plaintiffs have failed to adequately plead a § 10(b) claim against KPMG. The Court therefore **GRANTS** KPMG's motion to dismiss **WITHOUT PREJUDICE**. The Court otherwise **DENIES** the motions to dismiss.

## II. MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion to dismiss should be granted when, assuming the truth of the plaintiff's allegations, the complaint fails to state a claim for which relief can be granted. *See Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). In deciding whether the plaintiff has stated a claim, the Court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A court reads the complaint as a whole, together with matters appropriate for judicial notice, rather than isolating allegations and taking them out of context. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

## III. DISCUSSION

### A. STATE LAW CLAIMS

Plaintiffs' Complaint, filed on March 10, 2011, alleges causes of action for common law fraud and negligent misrepresentation. Complaint at ¶¶ 564–80. As a threshold matter the Court must decide a choice of law question. Defendants argue that the state law claims should be analyzed under California's three-year statute of limitations for fraud and two-year statute of limitations for negligence.

The Complaint does not specify under which state's laws the common law claims are asserted. Complaint at ¶¶ 564–580. Plaintiffs' Opposition to the motions to dismiss states that, because Plaintiffs are based in Nebraska, the claims are asserted under Nebraska law and subject to its four-year statute of limitations for fraud-based claims. Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss ("Opp.") at 30, ECF No. 47.[3]

Even if Plaintiffs' claim was properly brought under Nebraska law, the California statute of limitations would apply. A federal court addressing state law claims generally "utilizes its own state's statute of limitations." *Forsyth v. Cessna Aircraft Co.*, 520 F.2d 608, 613 (9th Cir. 1975). *See also* Restatement Second, Conflict of Laws § 142 (1971) ("An action will not be maintained if it is barred by the statute of limitations of the forum."). The general approach discussed in *Forsyth* is not an absolute rule, however. *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 485 (9th Cir. 1987). Rather, the Court must conduct a choice of law inquiry using the choice of law rules of the forum state. *Id.* California has adopted a two-step "governmental interest" approach to choice of law problems. Under that test, the Court must first determine whether the laws of the two jurisdictions differ. If they do, the Court must apply the law of the state whose interest would be more impaired if its law were not applied. *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 164-65 (1978).

A true conflict of laws exists in this case: Nebraska provides a four-year statute of limitations whereas the statute is two or three years in California. The first prong is therefore easily met. The Ninth Circuit faced a similar issue in

---

[3] The parties do not address whether the opposition brief was the appropriate filing to assert that its claims were brought under Nebraska law. Because it does not matter to the outcome, the Court assumes for the sake of argument that Plaintiffs' state law claims may properly be brought under Nebraska law and that this was properly raised in the Opposition.

*Nelson v. International Paint Co.*, 716 F.2d 640, 644 (9th Cir. 1983). Relying on California law, the Ninth Circuit noted that, "[s]tatutes of limitation are designed to protect the enacting state's residents and courts from the burdens associated with the prosecution of stale cases." *Id.* (quoting *Ashland Chemical Co. v. Provence*, 129 Cal. App. 3d 790, 794 (1982)). For this reason, the forum state (California) was the only one with an interest in having its statute of limitations applied. *Id*; *accord Asset Recovery Co. v. Jackson*, 34 Fed. App'x 594, 595 (9th Cir. 2002) (Applying California statute of limitations because "New Jersey has little interest in having its statute of limitations applied because there are no New Jersey defendants and New Jersey is not the forum."). The same analysis applies here. The governmental interests of Nebraska would not be impaired by applying California's statute of limitations because none of the defendants are Nebraskan and the forum is in California. Therefore, the Court will apply California's statutes of limitations for Plaintiffs' state law claims.

The statute of limitations for a fraud action in California is three years from the discovery "of the facts constituting the fraud or mistake." Cal. Civ. Proc. § 338(d). "The courts interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing. The statute of limitations begins to run when the plaintiff has information which would put a reasonable person on inquiry. A plaintiff need not be aware of the specific facts necessary to establish a claim since they can be developed in pretrial discovery." *Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (Cal. App. 4th Dist. 2001). California's statute of limitations for negligent misrepresentation is two years. Cal. Civ. Proc. § 339; *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008) ("For negligent misrepresentation, there is a two-year statute of limitations.").

Plaintiffs do not argue that their state law claims are timely under California's two- or three-year statutes of limitations, and any attempt to do so would be futile. The Complaint acknowledges that the "market learned the true financial condition of Countrywide" by November 2007. Complaint at ¶ 435. The Complaint itself lists a series of corrective disclosures and drops in stock price which constitute adequate "storm warnings" to trigger inquiry notice under California law. Complaint at ¶¶ 436–515. The Court therefore **GRANTS** Defendants' motions to dismiss Counts IV and V **WITH PREJUDICE**.

**B. SECTION 18 CLAIMS**

Plaintiffs bring a cause of action under Section 18 of the Exchange Act, which punishes misleading statements in documents required by the Exchange Act. 15 U.S.C. § 78r. Section 18 contains a one-year statute of limitations and a three-year statute of repose. *Id.* The claim is therefore time-barred unless the statutes of limitation and repose have been tolled.

Plaintiffs invoke *American Pipe & Constr. Co. v. Utah* in arguing that the *Pappas* class action tolled the statute of limitations for their Section 18 claim. 414 U.S. 538 (1974); Opp. at 27. Under *American Pipe*, class action proceedings toll the statute until a class member exercises its right to opt out. *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1488 (9th Cir. 1995). This Court previously held that *American Pipe* tolling applies to statutes of repose as well as to statutes of limitations. *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1166 (C.D. Cal. 2010). The *Pappas* complaints, however, alleged violations of § 10(b) and Rule 10(b)(5), not § 18.

Most courts to consider the issue have held that claims need not be identical in order for *American Pipe* to apply. The inquiry is whether the claims "concern the same evidence, memories, and witnesses as the subject matter of the original class suit." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 355 (1983) (Blackmun, J., concurring); *accord Tosti*, 754 F.2d at 1489. The goal is to ensure

that the initial suit gives the defendants enough notice of the claims against them that they can adequately preserve evidence and develop their litigation strategy. Plaintiffs argue that the absence of § 18 claims in the original class action complaints is not fatal because "Countrywide and KPMG had adequate notice that Plaintiffs would seek redress for the underlying course of conduct giving rise to Plaintiffs' damages, whether that recovery was pursuant to § 18 or § 10(b)." Opp. at 30.

It is true that Plaintiffs rely on some of the same underlying conduct for their § 18 and § 10(b) claims. However, the proof required for the two claims is markedly different. Specifically, a § 18 claim requires pleading actual reliance and allows evidence of good faith as an affirmative defense. 15 U.S.C. § 78r(a). The actual reliance requirement means that courts have "almost universally declined to certify § 18 claims in class actions." *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, No. 5:02CV1105, 2003 WL 25861087, at *18 (N.D. Ohio June 4, 2003). At least three courts have considered the exact question presented here: whether a § 18 claim is similar enough to a § 10(b) claim that an earlier-filed § 10(b) class action tolls the later-filed § 18 claim. All have held that the claims are distinct and dismissed the § 18 claim.

In *Lindner Dividend Fund, Inc. v. Ernst & Young*, the court held that, "[B]ecause the 'legal standards for bringing an action under § 18 are significantly different from those for 10(b),' . . . the tolling doctrine of *American Pipe* does not apply to plaintiffs' claims." 880 F. Supp. 49, 54–55 (D. Mass. 1995) (quoting *Decker v. Massey-Ferguson, Ltd.*, 534 F. Supp. 873, 883 (S.D.N.Y. 1981)). The two later cases both cite *Linder* and reach an identical conclusion. *Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*, No. 10-10331-JT, 2011 WL 1226983, at *11 (D. Mass. Mar. 31, 2011) ("The legal standards for proving Section 18 and Section 10(b) claims are sufficiently distinct that filing a class action alleging a violation of Section 10(b) does not toll the statute of limitations

for a Section 18 claim."); *Wyser-Pratte Mgmt. Co.*, 2003 WL 25861087, at *18–19 (N.D. Ohio June 4, 2003) ("Given the meaningful distinctions between the . . . § 10(b) claims and those asserted . . . under § 18, the Court finds that class tolling does not apply.").

Plaintiffs try unsuccessfully to distinguish these cases. The *Able Labs* decision that Plaintiffs cite involved relation back, not class action tolling. *In re Able Labs. Sec. Litig.*, C.A. No. 05-2681, 2008 WL 1967509, at *24 (D.N.J. Mar. 24, 2008). The *Enron* case that Plaintiffs rely on considered whether a federal class action tolled related claims brought under state law (so-called "cross-jurisdictional"). *In re Enron Corp. Sec. Litig.*, 465 F. Supp. 2d 687, 718 (S.D. Tex. 2006). This Court has already rejected cross-jurisdictional tolling in the *Centaur* case. *Centaur Classic Conv. Arb. Fund Ltd. v. Countrywide Fin. Corp.*, No. 10-CV-05699 MRP (MANx), ECF No. 57, slip op. at 10 (C.D. Cal. Jan. 20, 2011).

Plaintiffs also argue that "*Linder* and *Wyser-Pratte* barred § 18 claims in subsequently filed individual actions because the original class actions alleging § 10(b) claims involved different parties." Opp. at 10. This argument is misleading and borders on bad faith. *Linder* provided alternative holdings for dismissing the § 18 claims. One was that the new claim involved a party who had been dismissed from the earlier class action. *Linder*, 880 F. Supp. at 54. The second (and relevant one for present purposes) was that a § 10(b) class action does not toll a § 18 claim in any event. *Id.* at 54–55. The relevant section of *Wyser-Pratte* involves the same defendant in the § 10(b) and § 18 claims.[4] *Wyser-Pratte*, 2003 WL 25861087, at 18.

---

[4] An earlier portion of the opinion dealt with a motion to dismiss by two other defendants. There, the court did, in fact, dismiss the claims because the earlier-filed class actions had not included them. *Wyser-Pratte*, 2003 WL 25861087, at 12.

The Court is persuaded by the reasoning of its brethren in Massachusetts and Ohio. Section 18's actual reliance requirement precludes class-action treatment. Therefore, almost by definition, filing a § 10(b) class action does not put a defendant on notice that it will be called upon to defend a § 18 claim. Plaintiffs' § 18 claim was therefore not tolled by the filing of *Pappas*. Accordingly, the Court finds that Count III is time-barred under both the three-year statute of repose and the one-year statute of limitations. The Court **GRANTS** Defendants' motions to dismiss Count III **WITH PREJUDICE**.

### C. Section 10(b) Claims

Count I of the Complaint alleges violations of § 10(b) of the Exchange Act and Rule 10(b)(5) promulgated thereunder. This claim was brought in *Pappas*, and each of the Defendants was named in that action. Plaintiffs' § 10(b) action is therefore tolled by *American Pipe* and consequently timely. The Court next turns to whether the claim is well pled. A plaintiff asserting a claim under § 10(b) must plead six elements: (1) a material ["materiality"] (2) misrepresentation or omission ["falsity"] (3) made with scienter ["scienter"] (4) on which plaintiff relied ["reliance"], (5) suffering an economic loss ["loss"] (6) caused by the misrepresentation or omission ["loss causation"]. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1184 (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)). The Court will analyze each in turn.

#### *1. Materiality*

Plaintiffs are required to plead materiality with particularity. *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 951 (9th Cir. 2003). It is one of the "circumstances constituting fraud" not subject to Public Securities Litigation Reform Act ("PSLRA") standards. Fed. R. Civ. Proc. 9(b); 15 U.S.C. § 78u–4(b). Therefore, it is subject to Rule 9(b). As in the class action litigation, the alleged representations and omissions are clearly material. Plaintiffs' core allegation is that, beginning in

2003, Countrywide abandoned its underwriting guidelines in favor of increasing market share and selling ever more loans into the secondary market. Representations regarding the quality of Countrywide's underwriting (which goes to its core business) are therefore material to investors. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1185. *See also Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1155 (S.D. Cal. 2008) ("[A]s a mortgage lender . . . underwriting practices would be among the most important information looked to by investors.").

*2. Falsity & Scienter*

The Court analyzes falsity and scienter together. *In re Daou Sys.*, 411 F.3d 1006, 1015 (9th Cir. 2005) ("[F]alsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts, and the two requirements may be combined into a unitary inquiry under the PSLRA."). Falsity and scienter are subject to a heightened pleading standard under the PSLRA. 15 U.S.C. §§ 78u–4(b). With respect to falsity, the complaint must (1) explain why the statement is false or misleading and, (2) if alleged on information and belief, the complaint must "state with particularity all facts on which that belief is formed." 15 U.S.C. §§ 78u–4(b)(1). Regarding scienter, a pleading must allege with "particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). The Supreme Court defines a "strong inference" as one that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). To find a strong inference, a court must determine that a scienter inference is "at least as likely as any plausible opposing inference." *Id.* at 328. This requires a "comparative evaluation" of competing inferences that can be drawn from the allegations. *Id.* at 314. However, the evaluation is still made in light of the entire complaint and judicially noticeable

facts–a court must not isolate each allegation and determine whether that allegation meets the standard. *Id.* at 322.

"[K]nowing or intentional conduct" satisfies the "required state of mind." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008) (internal quotations omitted). Every Circuit also agrees that some degree of recklessness satisfies § 10(b)'s scienter requirement, but the Supreme Court has expressly reserved the question. *Tellabs*, 551 U.S. at 319 n.3. The Ninth Circuit has one of the most demanding recklessness standards, requiring "deliberate recklessness," which is recklessness that "reflects some degree of intentional or conscious misconduct"—apparently something more than gross recklessness and less than actual knowledge that the statement was false or misleading. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 976 (9th Cir. 1999), *reh'g en banc denied*, 195 F.3d 521 (9th Cir. 1999); *South Ferry*, 542 F.3d at 782.

<u>Countrywide and the Officer Defendants</u>

Taken as a whole the Complaint raises the same compelling inferences of falsity and scienter as did the consolidated class action complaint. Plaintiffs devote 72 pages of the Complaint to purportedly false statements made by Countrywide. Complaint at ¶¶ 247–432. These statements appeared in SEC filings, analyst calls, and press releases and can be broken into five main categories:

- Statements to the effect that Countrywide originated "high quality" mortgages through the use of rigorous underwriting guidelines. *See, e.g.*, Complaint at ¶ 250.
- Sarbanes-Oxley certifications that Countrywide's financial statements complied with Generally Accepted Accounting Principles ("GAAP"). *See, e.g.*, Complaint at ¶ 253.
- Statements regarding the percentage of "prime" vs. "subprime" which Countrywide originated and/or retained on its own books. *See, e.g.*, Complaint at ¶ 253.

- Assurances that Countrywide's portfolio of pay option ARMs and HELOCs represented a predictable and safe investment whose risks were mitigated by prudent underwriting. *See, e.g.*, Complaint at ¶¶ 295, 309, 345.
- Assurances that Mozilo had not sold shares on the basis of any insider knowledge but rather only pursuant to his 10b5-1 plan. *See, e.g.*, Complaint at ¶ 355.

The Complaint alleges the dates, times, and speakers of each of these misrepresentations with particularity. The Complaint alleges that these statements were made by Countrywide and by each of the Individual Defendants. And, these statements are adequately alleged to be actionably false for the same reasons that the Court found in the original class action. *In re Countrywide Fin. Corp. Sec. Litig*, 588 F. Supp. 2d at 1144.

The Court has likewise previously addressed scienter allegations as to Countrywide, Mozilo, Sambol, and Sieracki. *Id.* at 1192–97. As a result of further proceedings in the *Pappas* case and other cases filed involving Countrywide, there is a fuller factual record than when the Court allowed the *Pappas* action to proceed in 2008. That record is not appropriate for the pleading stage, however. Based only on the pleadings, the Court concludes that, as before, an adequately strong inference of scienter can be drawn with respect to Countrywide, Mozilo, and Sambol for the entire period. *Id.* There is a similar inference of scienter for Sieracki from April of 2005. *Id*; Complaint at ¶¶ 124–25; 141; 294 (discussing April conference call and June Risk Committee meetings attended by Sieracki). These inferences of scienter are based on actual knowledge, not recklessness.

<u>KPMG</u>

The Complaint asserts that Countrywide's financial statements for 2004, 2005, and 2006 violated GAAP and misrepresented Countrywide's financial condition. Complaint at ¶ 192. Plaintiffs aver that noncompliance with GAAP is

probative of scienter and that the financial statements themselves were materially false and misleading. Opp. at 59; Complaint at ¶¶ 151–191. These allegations are insufficient to state a claim against KPMG in light of Rule 9(b) and the Supreme Court's recent *Janus* decision. *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S.Ct. 2296 (2011). There, the Court made clear that only the maker of a statement is liable under § 10(b) and that "the maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it." *Id.* at 2303. KPMG, therefore, cannot be liable for Countrywide's financial reporting generally, but only specific statements that it made. The only KPMG statements alleged in the Complaint are unqualified audit opinions. Those audit opinions are referred to only obliquely, and the complaint does not explain with any particularity which statements in the opinions were false, in what way they were false, or what specific "red flags" KPMG overlooked which would demonstrate scienter. The Court therefore **GRANTS** KPMG's Motion to Dismiss with respect to Count 1. Plaintiffs have leave to amend to cure these deficiencies.

*3. Reliance*

The reliance element is subject to the pleading requirements of Rule 9(b) because it is one of the "circumstances constituting fraud" not subject to PSLRA standards. Fed. R. Civ. Proc. 9(b); 15 U.S.C. § 78u–4(b). Therefore, reliance must be pled with particularity to state a claim. Fed. R. Civ. Proc. 9(b). The Supreme Court has validated the proposition that an efficient market for a security establishes a rebuttable presumption of reasonable reliance. *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). Plaintiffs have pled that Countrywide was registered with the SEC and was traded on an automated market, that it was followed by numerous analysts, and that its stock price moved quickly in response to press releases and other company-specific news. Complaint at ¶ 243. Taken in the light most favorable to plaintiffs, these facts are enough to trigger the *Basic*

presumption of reliance. *See also In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 619 (C.D. Cal. 2009) ("Plaintiffs are entitled to the *Basic* presumption with respect to the common stock.").

Mozilo argues that the *Basic* presumption does not apply because Plaintiffs increased their holdings of Countrywide in mid-2007, after the truth had begun to leak out. Mozilo reasons that, since Plaintiffs purchased more shares *after* news of the misrepresentations was made public, Plaintiffs did not rely on the misrepresentations. This argument does not withstand scrutiny.

First, courts are nearly unanimous that post-disclosure purchases do not rebut a presumption of reliance for shares purchased before the disclosure. *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 576–77 (N.D. Cal. 2009) (collecting cases). The fraud on the market theory holds that in an efficient market, a security's price reflects all publicly available material information. Therefore, if the market is efficient, and if a security's price is inflated due to a misrepresentation, a plaintiff relies on the misrepresentation by way of paying an inflated price. This inquiry has nothing to do with whether the plaintiff would have purchased the security even without the misrepresentation. *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 203–04 (E.D. Pa. 2008) ("post-disclosure purchases will not prevent an investor from relying on the integrity of the market for pre-disclosure purchases"). It is possible that Plaintiffs did not rely on the integrity of the market price in this particular instance. But that is too particularized and fact-dependent an inquiry to engage in at the motion to dismiss stage.

Mozilo also argues that Plaintiffs' trading pattern belies reliance for its 2007 purchases because those purchases came amidst a wave of corrective disclosures. Mozilo Mtn. to Dismiss at 17, ECF No. 30. Plaintiffs have pled a series of corrective disclosures stretching into September 2007. As in the class action, the fact that Plaintiffs purchased after some disclosures, but before others, does not rebut their reliance on any not-yet-disclosed misrepresentations. If the market for

Countrywide stock remained informationally efficient during the mid-2007 (and no party has contended that it did not), then Plaintiffs are entitled to a presumption that the price reflected any not-yet-corrected misrepresentation still in the market. This establishes reliance under *Basic*.

To be sure, Plaintiffs' complicated and counterintuitive trading pattern will present a challenge in demonstrating damages and loss causation. Defendants may likewise be able to rebut individual reliance based on a more complete factual record. But those are practical problems of proof; they are not appropriate for resolution at the pleading stage.

*4. Loss*

Plaintiffs are not required to plead their exact damages. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1199. Here, as in the class action, Plaintiffs adequately allege that they have suffered economic losses by a decline in Countrywide's stock price.

*5. Loss Causation*

Loss causation is "a causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005). A plaintiff must plead loss causation in a § 10(b) case. *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 346 n.39 (S.D.N.Y. 2005) (observing that the loss causation element of § 10(b) is the "mirror image" of the defendants' burden on loss causation on § 11). Here, Plaintiffs plead a "materialization of the risk" theory of loss causation. Briefly summarized, Plaintiffs allege that Countrywide completely abandoned its underwriting guidelines in order to increase loan volume. Complaint at ¶ 433. This abandonment meant that Countrywide had a higher-than-anticipated risk of "delinquencies and defaults, reduced earnings, and an inability to access liquidity and the secondary loan market." *Id.* When these risks ultimately materialized, the

market purportedly realized that it had overvalued Countrywide and the stock price dropped precipitously. *Id.*

As in *Centaur*, Defendants urge the Court to reject the materialization of the risk theory of loss causation based on two recent cases. In *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010), the Ninth Circuit held that a plaintiff cannot rely on the "impact" of a fraudulent act or practice as the cause of its loss; the market must react to disclosure of the fraudulent act itself. In *In re Nuveen Funds Sec. Litig.*, Nos. C 08–4575 SI, C 09–1437 SI, 2011 WL 1842819, at *10 (N.D. Cal. 2011), Judge Illston pointed out that the Ninth Circuit has not endorsed the theory. But, Judge Illston declined to reach that question because she found that the *Nuveen* plaintiffs had failed to prove materialization of the risk in any event. *Id.* at 12.

Plaintiffs style their complaint as a "materialization of the risk" theory, but it is not clear on the face of the complaint that the allegations are any different from the straightforward fraud claim in *Oracle*. In both instances, the plaintiff alleged defects or problems with a product sold by the defendant. In both cases, the defendant announced subsequent financial problems (an earnings miss in *Oracle*, here a series of charges against earnings, forecast revisions, and liquidity problems). *Oracle* held that, to be compensable, a curative disclosure must relate specifically to the product defects alleged, not to the health of the company generally or to macroeconomic factors which impact the company's long-term outlook. *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 392.

Under either materialization of the risk or a straightforward fraud theory, Plaintiff will be required to show an explicit causal linkage between misrepresentation and loss. In *In re Rackable Systems, Inc. Sec. Litig.*, No. C 09–0222 CW, 2010 WL 3447857, at *12 (N.D. Cal. Aug. 27, 2010), Judge Wilken dismissed the claim because "[a]ll of Defendants' statements that allegedly reveal the 'truth' of the fraud Defendants committed upon the market disclose negative

news about Rackable's financial condition, its future prospects or the competition in the computer server industry in general. However, these statements do not reveal the necessary causal link between the alleged fraud and the drop in Rackable's stock price. Instead, they rely on a correlation between Rackable's announcement of financial results and a decrease in stock price."

The Court agrees with Judge Wilken's analysis and will enforce the same requirement in this case. Plaintiffs will ultimately bear the burden of showing that declines in Countrywide's share price occurred because the market learned that Countrywide had abandoned its underwriting standards or mischaracterized the quality of the loans that it was issuing. The Court is skeptical that Plaintiffs will be able to meet this burden for most of the curative disclosures that they include in the Complaint. However, following *Oracle* and *Nuveen*, the Court reserves that inquiry for the summary judgment stage and further factual development. For the time being the Court is satisfied that some of the disclosures are plausibly linked to the alleged misrepresentations. *See* Complaint at ¶ 442 (alleging a drop in Countrywide's share price when the market learned that Countrywide had characterized subprime loans as prime); Complaint at ¶ 440 (alleging a drop in Countrywide's share price when the market learned that defaults and delinquencies were higher than previously expected).

As before, Defendants argue that all drops in Countrywide's stock price were due to the unprecedented crisis that upended capital markets in 2007 and prevented Countrywide from selling mortgages into the secondary market. Countrywide Def's Mtn. to Dismiss at 28–37. In a new twist, Defendants cite the Plaintiffs' own shareholder reports, which blame their losses on market turmoil rather than revelations about Countrywide's underwriting. Countrywide Def's Mtn. to Dismiss at 32–33. Loss causation, however, depends on whether the market (not the plaintiff) thinks that a curative disclosure actually corrects some previous market misconception. *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 392.

As a market participant, the Weitz Funds' belief that Countrywide declined because of market forces rather than poor underwriting is certainly probative. But, the Weitz funds were only one market participant, and their characterization of the market is not dispositive. Plaintiffs have pled particular disclosures and linked those disclosures to declines in Countrywide's stock price. Read in the light most favorable to Plaintiffs, the complaint adequately alleges that at least some of those disclosures corrected the market's misapprehensions about Countrywide's underwriting practices. *E.g.* Complaint at ¶¶ 441–48 (charges against earnings a result of poor underwriting standards and misclassification of loans as prime). As in the *Centaur* case, loss causation is an issue that the Court will reserve for a more complete factual record. *Centaur*, 2011 WL 2504637, at *4.

Defendants also attempt to defeat loss causation by arguing truth on the market. Those attempts fail for the same reasons explained in the class action. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1201.

The Court therefore **GRANTS** Defendant KPMG's motion to dismiss Count I. Plaintiffs have leave to amend. The Complaint adequately states a claim against the remaining Defendants.

**D. SECTION 20(A) CLAIMS**

Count II alleges control person claims against Mozilo, Sambol, and Sieracki under § 20(a) of the Exchange Act. Complaint at ¶ 554. Section 20(a) creates joint and several liability for control persons who aid and abet '34 Act violations. *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003). The elements of § 20(a) are "(1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator." *Id.* (internal citation and quotations omitted). There is "a good faith defense if [a defendant] can show no scienter and an effective lack of participation." *Id.* Whether a defendant is a control person is "an intensely factual question." *Id.* The element of control need

not be pled with particularity. *In re LDK Solar Sec. Litig.*, 2008 WL 4369987, at *12 (N.D. Cal. Sept. 24, 2008).

As the Court explained in the class action case, Mozilo, Sambol, and Sieracki are plausible control persons of Countrywide. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1201. This Count is therefore adequately pled for the same reasons as in the class action. *Id.*

## IV. CONCLUSION

For the reasons discussed above, the Court finds that Plaintiffs' state law and Section 18 claims are time-barred. The Court therefore **GRANTS** Defendants' motions to dismiss Counts III, IV, and V with respect to **ALL DEFENDANTS**. Dismissal is with prejudice. Plaintiffs have failed to plead any false statements or facts sufficient for a strong inference of scienter on behalf of KPMG. The Court therefore **GRANTS** KPMG's motion to dismiss Count I. Plaintiffs have leave to amend. The Court **DENIES** the other Defendants' motions to dismiss Counts I and II.

The Court **GRANTS** Plaintiffs leave to file a First Amended Complaint no later than 21 days from the date of this Order.

**IT IS SO ORDERED.**

DATED: August 22, 2011

Mariana R. Pfaelzer

Hon. Mariana R. Pfaelzer
United States District Judge