MICHAEL D. TORPEY (State Bar No. 79424)
*mtorpey@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California 94105-2669
Telephone: 415-773-5700
Facsimile: 415-773-5759

MICHAEL C. TU (State Bar No. 186793)
*mtu@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017-5855
Telephone: 213-629-2020
Facsimile: 213-612-2499

Attorneys for Defendant David Sambol

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

CHILDREN'S HOSPITAL & MEDICAL CENTER FOUNDATION OF OMAHA, HASTINGS COLLEGE FOUNDATION, PETER KIEWIT FOUNDATION, WEITZ PARTNERS VALUE FUND, WEITZ HICKORY FUND, WEITZ HICKORY FUND, WEITZ BALANCED FUND, RESEARCH FUND, PARTNERS III OPPORTUNITY FUND, and HEIDER WEITZ PARTNERSHIP,

Plaintiffs,

v.

COUNTRYWIDE FINANCIAL CORPORATION, ANGELO R. MOZILO, DAVID SAMBOL, ERIC P. SIERACKI, and KPMG LLP,

Defendants.

Case No. CV-11-2056 MRP (MANx)

**DEFENDANT DAVID SAMBOL'S ANSWER TO COMPLAINT**

**DEMAND FOR JURY TRIAL**

Defendant David Sambol ("Mr. Sambol") hereby answers Plaintiffs' Complaint. To the extent not specifically admitted, Mr. Sambol denies each and every allegation of the Complaint.

## GENERAL RESPONSES

The numbered paragraphs of this answer correspond to the paragraphs as numbered in the Complaint. To the extent the paragraphs in the Complaint are grouped under headings, Mr. Sambol responds generally that such headings and groupings are conclusions of law or fact and deny each and every such allegation made or implied by such headings or groupings.

To the extent that the Complaint attempts to characterize certain alleged facts in a conclusory manner such as "fraudulent," "manipulative," "material," "wrongful," "illegal," or "knowingly," Mr. Sambol responds generally that such allegations constitute pejoratives or conclusions of law and do not constitute allegations of fact requiring a response. To the extent such allegations may be construed as allegations of fact, Mr. Sambol objects to and denies each such allegation.

The Complaint contains numerous allegations concerning all or some defendants as a group. Unless otherwise specifically indicated, Mr. Sambol lacks knowledge or information sufficient to form a belief as to the truth of any of the allegations concerning the knowledge of others.

This answer is submitted only on behalf of Mr. Sambol. Mr. Sambol occasionally responds to allegations relating to the status, conduct, or other affairs of other defendants, persons, or entities not answering herein. Such responses are not binding on, and are not intended to impact the rights of, any other defendants, persons, or entities. Similarly, to the extent other defendants answer the allegations in the Complaint, such answers are not binding on Mr. Sambol.

Finally, in response to many of the allegations in the Complaint, Mr. Sambol answers herein that he is without knowledge or information sufficient to form a

belief as to the truth of such allegations. In each and every instance where Mr. Sambol so answers, Mr. Sambol on that basis denies each and every such allegation, and incorporates by reference this response into each paragraph below as if fully set forth therein.

## SPECIFIC RESPONSES

1. Mr. Sambol denies the allegations in paragraph 1.

2. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 2, and therefore denies them. Mr. Sambol denies the remaining allegations in paragraph 2.

3. Mr. Sambol denies the allegations in paragraph 3.

4. Mr. Sambol avers that the contents of the statements referenced in paragraph 4 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

5. Mr. Sambol avers that the allegations in paragraph 5 are vague and ambiguous and therefore no response is required. To the extent a further response is required, Mr. Sambol avers, on information and belief, that information regarding the volume of Countrywide's origination of various loan products is contained, among other places, in the Company's Form 10-K reports, which speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol denies the remaining allegations in paragraph 5.

6. Mr. Sambol admits, on information and belief, that investors knew Countrywide was originating more Pay Option ARMs and HELOCs, among other nontraditional mortgage products. Mr. Sambol denies the remaining allegations in paragraph 6.

7. Mr. Sambol avers that the statements referenced in paragraph 7 speak

for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 7, and therefore denies them.

8. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements on March 15, 2005, which speak for themselves. Mr. Sambol refers to the statements referenced in paragraph 8 for their contents and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 8, and therefore denies them.

9. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements on September 13, 2005, which speak for themselves. Mr. Sambol refers to the statements referenced in paragraph 9 for their contents and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9, and therefore denies them.

10. Mr. Sambol avers that the allegations in paragraph 10 are vague and ambiguous and therefore no response is required. Mr. Sambol avers that Countrywide's SEC filings speak for themselves, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

11. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements on July 26, 2005, which speak for themselves. Mr. Sambol refers to the statements referenced in paragraph 11 for their contents and denies any characterization inconsistent with their terms. To the extent the allegations require a

further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11, and therefore denies them.

12. Mr. Sambol denies the allegations in the first sentence of paragraph 12. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12, and therefore denies them.

13. Mr. Sambol denies the allegations in the third, fourth, fifth, and last sentences of paragraph 13. Mr. Sambol further avers that the allegations in the first three sentences of paragraph 13 are vague and ambiguous, and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol avers that Countrywide's SEC filings and public statements referenced in paragraph 13 speak for themselves, refers to the documents and statements for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13, and therefore denies them.

14. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements on May 31, 2006, and that various public statements regarding PayOption ARMs were made, which speak for themselves. Mr. Sambol refers to the statements referenced in paragraph 14 for their contents and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14, and therefore denies them.

15. Mr. Sambol avers that the allegations in the first sentence of paragraph 15 are vague and ambiguous, and therefore no response is required. Mr. Sambol avers, on information and belief, that the internal e-mail referenced in paragraph 15 speaks for itself, refers to the e-mail for its contents, and denies any characterization

inconsistent with its terms. To the extent the allegations require a further response, they are denied.

16. Mr. Sambol denies the allegations in the first sentence of paragraph 16. Mr. Sambol avers, on information and belief, that the internal Countrywide report referenced in paragraph 16 speaks for itself, refers to the report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

17. Mr. Sambol avers that the allegations in paragraph 17 are not directed to him and therefore no response is required. To the extent a response is required, Mr. Sambol avers that the e-mail referenced in paragraph 17 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent that a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 17, and therefore denies them.

18. Mr. Sambol denies the allegations in paragraph 18 as they relate to him, and avers that to the extent such allegations are directed to the other defendants, no response is required. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18, and therefore denies them.

19. Mr. Sambol denies the allegations in paragraph 19.

20. Mr. Sambol denies the allegations in paragraph 20, except that Mr. Sambol avers that the allegations in the second sentence of paragraph 20 are vague and ambiguous, and therefore no response is required. To the extent the allegations require a further response, they are denied.

21. Mr. Sambol admits, on information and belief, that paragraph 21 references contents from a July 16, 2007 public statement, which speaks for itself. Mr. Sambol refers to the statement referenced in paragraph 21 for its contents and denies any characterization inconsistent with its terms. To the extent the allegations

require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 21, and therefore denies them.

22. Mr. Sambol avers that the allegations in paragraph 22 reference a July 24, 2007 public statement, which speaks for itself. Mr. Sambol refers to the statement referenced in paragraph 22 for its contents and denies any characterization inconsistent with its terms. Mr. Sambol further avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. Mr. Sambol denies the remaining allegations in paragraph 22.

23. Mr. Sambol admits, on information and belief, that Mr. Mozilo made public statements on July 24, 2007, which speak for themselves. Mr. Sambol refers to the statement referenced in paragraph 23 for its contents and denies any characterization inconsistent with its terms. Mr. Sambol denies the remaining allegations in paragraph 23.

24. Mr. Sambol denies the allegations in paragraph 24.

25. Mr. Sambol denies the allegations in paragraph 25.

26. Mr. Sambol denies the allegations in paragraph 26 as they relate to him, and avers that to the extent such allegations are directed to the other defendants, no response is required. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various public statements on August 23, 2007, which speak for themselves. Mr. Sambol refers to the statements referenced in paragraph 26 for their contents and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 26, and therefore denies them.

27. Mr. Sambol admits, on information and belief, that an article appeared in the November 26, 2007 edition of the *Wall Street Journal* regarding Countrywide, which speaks for itself. Mr. Sambol refers to the article referenced in paragraph 27

for its contents and denies any characterization inconsistent with its terms. Mr. Sambol denies the remaining allegations in paragraph 27.

28. Mr. Sambol denies the allegations in the first sentence of paragraph 28. Mr. Sambol avers that the documents referenced in paragraph 28 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

29. Mr. Sambol admits, on information and belief, that Bank of America and Countrywide issued an announcement on January 11, 2008, which speaks for itself. Mr. Sambol refers to the announcement referenced in paragraph 29 for its contents and denies any characterization inconsistent with its terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 29, and therefore denies them.

30. Mr. Sambol avers that the first sentence of paragraph 30 constitutes Plaintiffs' characterization of their Complaint as to which no response is required. Mr. Sambol denies the remaining allegations in paragraph 30.

31. Mr. Sambol avers that paragraph 31 states a legal conclusion to which no response is required. To the extent the allegations require a response, they are denied.

32. Mr. Sambol avers that paragraph 32 states a legal conclusion to which no response is required. To the extent the allegations require a response, they are denied.

33. Mr. Sambol avers that paragraph 33 states a legal conclusion to which no response is required. To the extent the allegations require a response, they are denied.

34. Mr. Sambol avers that he lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 34, and therefore denies them.

35. Mr. Sambol denies the allegations in paragraph 35, except that Mr. Sambol avers that the contents of Plaintiffs' September 30, 2010 letter to Defendants referenced in paragraph 35 speaks for itself, refers to the letter for its contents, and denies any characterization inconsistent with its terms.

36. Mr. Sambol admits, on information and belief, the first sentence of paragraph 36. Mr. Sambol admits, on information and belief, that an 8-K issued by Countrywide on July 8, 2008 states that on July 1, 2008, Countrywide completed its merger with Red Oak Merger Corporation, a wholly owned subsidiary of Bank of America. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 36, and therefore denies them.

37. Mr. Sambol avers that the allegations in paragraph 37 are not directed to Mr. Sambol and therefore no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 37 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol admits, on information and belief, that Mr. Mozilo was Countrywide's co-founder, Chairman of Countrywide's Board of Directors, and CEO during the Relevant Time Period. Mr. Sambol denies the allegation that any of the statements or documents referenced in paragraph 37 was materially false and misleading. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 37, and therefore denies them.

38. Mr. Sambol admits that from approximately April 2006 to September 2006, he served as the Executive Managing Director of Business Segment Operations at Countrywide. Mr. Sambol served as President and Chief Operating Officer of Countrywide Home Loans ("CHL") from January 1, 2004 to October 9,

2006. Beginning in September 2006, Mr. Sambol served as President and Chief Operating Officer of Countrywide Financial Corporation. Mr. Sambol served as Chairman of the Board and Chief Executive Officer of CHL throughout 2007. Mr. Sambol admits he was a member of Countrywide's credit risk committee during some portion of the Relevant Time Period. Mr. Sambol admits he signed the documents referenced in paragraph 38, avers that the contents of the documents speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol denies the allegation that any of the documents referenced in paragraph 38 was materially false and misleading. Mr. Sambol denies the remaining allegations of paragraph 38.

39. Mr. Sambol avers that the allegations in paragraph 39 are not directed to Mr. Sambol and therefore no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 39 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol admits, on information and belief, that Mr. Sieracki was, starting in 2005, Executive Managing Director and Chief Financial Officer of Countrywide Financial Corporation. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 39, and therefore denies them.

40. Mr. Sambol admits that Plaintiffs purport to define the terms "Individual Defendants" and "Officer Defendants" in paragraph 40.

41. Mr. Sambol avers that the allegations in paragraph 41 are not directed to him and therefore no response is required. To the extent a response is required, Mr. Sambol admits, on information and belief, the first and second sentences in paragraph 41. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 41, and therefore denies them.

42. Mr. Sambol admits that Countrywide originated, sold, and serviced both prime and subprime loans. Mr. Sambol avers that information regarding Countrywide's total loan originations and earnings is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

43. Mr. Sambol admits, on information and belief, that Countrywide generally sold the loans it originated to the secondary market through whole loan sales or securitizations. Mr. Sambol avers that information regarding Countrywide's total originations and earnings figures is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

44. Mr. Sambol avers that the allegations in paragraph 44 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44, and therefore denies them.

45. Mr. Sambol avers that the allegations in paragraph 45 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

46. Mr. Sambol denies the allegations in paragraph 46.

47. Mr. Sambol avers that information regarding Countrywide's earnings is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that the allegation regarding market share is vague and ambiguous and therefore no response is required. Mr. Sambol denies the remaining allegations in paragraph 47.

48. Mr. Sambol avers that information regarding Countrywide's loan originations is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

49. Mr. Sambol admits, on information and belief, that the market understood Countrywide's production of loans and the credit risks of the products offered. Mr. Sambol denies the remaining allegations in paragraph 49.

50. Mr. Sambol avers that the allegations in paragraph 50 are vague and ambiguous and therefore no response is required. To the extent paragraph 50 incorporates the allegations in Section V.B-C of the Complaint, Mr. Sambol incorporates his responses to the paragraphs in those sections. To the extent the allegations require a further response, they are denied.

51. Mr. Sambol avers that the allegations in paragraph 51 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

52. Mr. Sambol avers that the Forms 10-K referenced in paragraph 52 speak for themselves, refers to the Forms 10-K for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

53. Mr. Sambol avers that the Forms 10-K referenced in paragraph 53 speak for themselves, refers to the Forms 10-K for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

54. Mr. Sambol avers that the periodic filings referenced in paragraph 54 speak for themselves, refers to the periodic filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

55. Mr. Sambol denies the allegations in paragraph 55.

56. Mr. Sambol avers that the allegations in paragraph 56 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

57. Mr. Sambol avers that information regarding Countrywide's loan originations is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. Mr. Sambol avers that the allegation regarding market share is vague and ambiguous and therefore no response is required. Mr. Sambol denies the remaining allegations in paragraph 57.

58. Mr. Sambol denies the allegations in paragraph 58.

59. Mr. Sambol avers that the allegations in paragraph 59 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

60. Mr. Sambol avers that the allegations in paragraph 60 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

61. Mr. Sambol denies the allegations in paragraph 61.

62. Mr. Sambol denies the allegations in paragraph 62.

63. Mr. Sambol avers that the *MSNBC News* article referenced in paragraph 63 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 63, and therefore denies them.

64. Mr. Sambol avers that the *BusinessWeek* article referenced in paragraph 64 speaks for itself, refers to the article for its contents, and denies any

characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 64, and therefore denies them.

65. Mr. Sambol denies the first two sentences in paragraph 65. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 65, and therefore denies them.

66. Mr. Sambol denies the allegations in the first sentence in paragraph 66. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 66, and therefore denies them.

67. Mr. Sambol denies the allegations in paragraph 67.

68. Mr. Sambol denies the allegations in the first two sentences in paragraph 68. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 68, and therefore denies them.

69. Mr. Sambol avers that the allegations in paragraph 69 are vague and ambiguous and therefore no response is required. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 69, and therefore denies them.

70. Mr. Sambol denies the allegations in paragraph 70.

71. Mr. Sambol avers that the allegations in paragraph 71 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

72. Mr. Sambol avers that the document referenced in paragraph 72 speaks for itself, refers to the document for its contents, and denies any characterization

inconsistent with its terms. To the extent the allegations require a further response, they are denied.

73. Mr. Sambol avers that the allegations in paragraph 73 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73, and therefore denies them.

74. Mr. Sambol denies the allegations in paragraph 74.

75. Mr. Sambol avers that the Forms 10-K referenced in paragraph 75 speak for themselves, refers to the Forms 10-K for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol admits, on information and belief, that Countrywide made use of an automated underwriting system known as “CLUES” as part of its loan underwriting process. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 75, and therefore denies them.

76. Mr. Sambol avers that the allegations in paragraph 76 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76, and therefore denies them.

77. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77, and therefore denies them.

78. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78, and therefore denies them.

79. Mr. Sambol avers that the documents referenced in paragraph 79 speak

for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 79, and therefore denies them.

80. Mr. Sambol avers that Countrywide's "official underwriting guidelines" referenced in paragraph 80 speak for themselves, refers to the guidelines for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 80, and therefore denies them.

81. Mr. Sambol avers that the *Conde Nast Portfolio* article referenced in paragraph 81 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 81, and therefore denies them.

82. Mr. Sambol avers that the first sentence of paragraph 82 is vague and ambiguous and therefore no response is required. Mr. Sambol avers that the presentation referenced in paragraph 82 speaks for itself, refers to the presentation for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 82, and therefore denies them.

83. Mr. Sambol avers that Countrywide's disclosures referenced in paragraph 83 speak for themselves, refers to the disclosures for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that the remaining allegations of paragraph 83 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

84. Mr. Sambol avers that the allegations in paragraph 84 are vague and ambiguous and therefore no response is required. Mr. Sambol avers that

information regarding Countrywide's loan products and Pay Option ARMs is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

85. Mr. Sambol avers that the allegations in paragraph 85 are vague and ambiguous and therefore no response is required. Mr. Sambol avers that information regarding Countrywide's Pay Option ARMs and loans held for investment is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

86. Mr. Sambol avers that the 2006 Form 10-K referenced in paragraph 86 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence in paragraph 86, and therefore denies them. To the extent the allegations require a further response, they are denied.

87. Mr. Sambol avers that the allegations in paragraph 87 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87, and therefore denies them.

88. Mr. Sambol denies the allegations in paragraph 88. To the extent paragraph 88 incorporates the allegations in Section IV.D.6 of the Complaint, Mr. Sambol incorporates his responses to the paragraphs in that section.

89. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 89, and therefore denies them. Mr. Sambol denies the remaining allegations in paragraph 89.

90. Mr. Sambol denies the allegations in the last sentence of paragraph 90. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 90, and therefore denies them.

91. Mr. Sambol denies the allegations in paragraph 91.

92. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 92 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

93. Mr. Sambol avers that the e-mail referenced in paragraph 93 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93, and therefore denies them.

94. Mr. Sambol avers that the memorandum referenced in paragraph 94 speaks for itself, refers to the memorandum for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 94, and therefore denies them.

95. Mr. Sambol avers that the e-mail referenced in paragraph 95 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

96. Mr. Sambol denies the allegations in the last sentence of paragraph 96. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 96, and therefore denies them.

97. Mr. Sambol denies the allegations in paragraph 97.

98. Mr. Sambol avers that the testimony referenced in paragraph 98 speaks for itself, refers to the testimony for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

99. Mr. Sambol avers that the e-mail referenced in paragraph 99 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

100. Mr. Sambol avers that the e-mail referenced in paragraph 100 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

101. Mr. Sambol avers that the e-mail referenced in paragraph 101 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

102. Mr. Sambol avers that the "proposed guidelines" referenced in paragraph 102 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

103. Mr. Sambol avers that the e-mail referenced in paragraph 103 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

104. Mr. Sambol denies the allegations in paragraph 104.

105. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 105 speaks for itself, refers to the article for its contents, and denies any

characterization inconsistent with its terms. Mr. Sambol avers that the allegations in paragraph 105 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

106. Mr. Sambol avers that the allegations in paragraph 106 are vague and ambiguous and therefore no response is required. Mr. Sambol avers that information regarding Countrywide's loan products and HELOCs is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

107. Mr. Sambol avers that the allegations in paragraph 107 are vague and ambiguous and therefore no response is required. Mr. Sambol avers that information regarding Countrywide's 80/20 loan products is contained, among other places, in its public disclosures, refers to the disclosures for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

108. Mr. Sambol avers that the documents referenced in paragraph 108 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol further avers that the allegations in paragraph 108 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol denies the allegations in the first and last sentences of paragraph 108. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 108, and therefore denies them.

109. Mr. Sambol avers that the allegations in the first sentence of paragraph 109 are vague and ambiguous and therefore no response is required. To the extent the allegations in the first sentence require a further response, they are denied. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 109, and therefore denies

them.

110. Mr. Sambol avers that the documents referenced in paragraph 110 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110, and therefore denies them.

111. Mr. Sambol avers that the e-mail referenced in paragraph 111 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 111, and therefore denies them.

112. Mr. Sambol avers that the e-mail referenced in paragraph 112 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

113. Mr. Sambol avers that the documents referenced in paragraph 113 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 113, and therefore denies them.

114. Mr. Sambol avers that the memorandum referenced in paragraph 114 speaks for itself, refers to the memorandum for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 114, and therefore denies them.

115. Mr. Sambol avers that the document referenced in paragraph 115 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

116. Mr. Sambol denies the allegations in paragraph 116 as they relate to him and avers that no response is required for the allegations directed to the other defendants.

117. Mr. Sambol avers that the reports referenced in paragraph 117 speak for themselves, refers to the reports for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 117, and therefore denies them.

118. Mr. Sambol avers that the document referenced in paragraph 118 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol denies the allegations as they relate to him and avers that no response is required for the allegations directed to the other defendants.

119. Mr. Sambol avers that the presentation referenced in paragraph 119 speaks for itself, refers to the presentation for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 119, and therefore denies them.

120. Mr. Sambol avers that the document referenced in paragraph 120 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 120, and therefore denies them.

121. Mr. Sambol denies the allegations in paragraph 121.

122. Mr. Sambol avers that information regarding Countrywide's Pay Option ARMs is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that the allegations in paragraph 122 are vague and ambiguous and therefore no response is required. To the extent a response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding investors in paragraph 122, and therefore denies them. Mr. Sambol denies the remaining allegations in paragraph 122.

123. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123, and therefore denies them.

124. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 124, and therefore denies them.

125. Mr. Sambol avers that the memorandum referenced in paragraph 125 speaks for itself, refers to the memorandum for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 125, and therefore denies them.

126. Mr. Sambol avers that the e-mails referenced in paragraph 126 speak for themselves, refers to the e-mails for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 126, and therefore denies them.

127. Mr. Sambol avers that the e-mail and audit report referenced in paragraph 127 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 127, and therefore denies them.

128. Mr. Sambol avers that the e-mails referenced in paragraph 128 speak for themselves, refers to the e-mails for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 128, and therefore denies them.

129. Mr. Sambol avers that the e-mail referenced in paragraph 129 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 129, and therefore denies them.

130. Mr. Sambol avers that the allegations in paragraph 130 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol denies the allegations as they relate to him and avers that no response is required for the allegations directed to the other defendants.

131. Mr. Sambol avers that the documents referenced in paragraph 131 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 131, and therefore denies them.

132. Mr. Sambol avers that the e-mail referenced in paragraph 132 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 132, and therefore denies them.

133. Mr. Sambol avers that the e-mails referenced in paragraph 133 speak for themselves, refers to the e-mails for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 133, and therefore denies them.

134. Mr. Sambol avers that the e-mails referenced in paragraph 134 speak for themselves, refers to the e-mails for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 134, and therefore denies them.

135. Mr. Sambol avers that the e-mail referenced in paragraph 135 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 135, and therefore denies them.

136. Mr. Sambol avers that the e-mails referenced in paragraph 136 speak for themselves, refers to the e-mails for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 136, and therefore denies them.

137. Mr. Sambol avers that the e-mails referenced in paragraph 137 speak for themselves, refers to the e-mails for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 137, and therefore denies them.

138. Mr. Sambol avers that the e-mail referenced in paragraph 138 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

139. Mr. Sambol denies the allegations in paragraph 139.

140. Mr. Sambol admits that he was a member of the Countrywide Credit Risk Committee at various points in time. Mr. Sambol further admits, on information and belief, that the Countrywide Credit Risk Committee generally held quarterly meetings. Mr. Sambol avers that the presentations referenced in paragraph 140 speak for themselves, refers to the presentations for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 140, and therefore denies them.

141. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 141, and therefore denies them.

142. Mr. Sambol admits that he attended certain meetings of Countrywide's asset and liability committee at various points in time. Mr. Sambol avers that the documents referenced in paragraph 142 speak for themselves, refers to the

documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 142, and therefore denies them.

143. Mr. Sambol avers that the allegations in paragraph 143 are vague and ambiguous and therefore no response is required. To the extent a response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 143, and therefore denies them.

144. Mr. Sambol avers that the report referenced in paragraph 144 speaks for itself, refers to the report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations in paragraph 144 require a further response, Mr. Sambol denies the allegations as they relate to him and avers that no response is required for the allegations directed to the other defendants.

145. Mr. Sambol avers that the e-mails referenced in paragraph 145 speak for themselves, refers to the e-mails for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol denies the allegations as they relate to him and avers that no response is required for the allegations directed to the other defendants.

146. Mr. Sambol denies the allegations in paragraph 146 as they relate to him and avers that no response is required for the allegations directed to the other defendants. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 146, and therefore denies them.

147. Mr. Sambol avers that the documents referenced in paragraph 147 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 147, and therefore denies them.

148. Mr. Sambol avers that the e-mails referenced in paragraph 148 speak for themselves, refers to the e-mails for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 148, and therefore denies them.

149. Mr. Sambol avers that the documents referenced in paragraph 149 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol denies the allegations as they relate to him and avers that no response is required for the allegations directed to the other defendants.

150. Mr. Sambol denies the allegations in paragraph 150.

151. Mr. Sambol avers that the allegations in paragraph 151 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 151, and therefore denies them.

152. Mr. Sambol avers that the allegations in paragraph 152 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 152 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 152, and therefore denies them.

153. Mr. Sambol denies the allegations in paragraph 153.

154. Mr. Sambol avers that the allegations in paragraph 154 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 154 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 154, and therefore denies them.

155. Mr. Sambol avers that the allegations in paragraph 155 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 155 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 155, and therefore denies them.

156. Mr. Sambol avers that the allegations in paragraph 156 contain interpretations of audit and accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 156 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 156, and therefore denies them.

157. Mr. Sambol avers that the allegations in paragraph 157 contain interpretations of audit and accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 157 speak for themselves, refers to the documents for their contents, and

denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 157, and therefore denies them.

158. Mr. Sambol avers that the allegations in paragraph 158 contain interpretations of audit and accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 158 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 158, and therefore denies them.

159. Mr. Sambol avers that the allegations in paragraph 159 contain interpretations of audit and accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 159 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 159, and therefore denies them.

160. Mr. Sambol avers that the allegations in paragraph 160 contain interpretations of audit and accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 160 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 160, and therefore denies them.

161. Mr. Sambol avers that the allegations in paragraph 161 contain interpretations of audit and accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 161 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 161, and therefore denies them.

162. Mr. Sambol avers that the allegations in paragraph 162 contain interpretations of audit and accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 162 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 162, and therefore denies them.

163. Mr. Sambol avers that the allegations in paragraph 163 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 163 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 163, and therefore denies them.

164. Mr. Sambol avers that the allegations in paragraph 164 contain interpretations of audit and accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 164 speak for themselves, refers to the documents for their contents, and

denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 164, and therefore denies them.

165. Mr. Sambol avers that the allegations in paragraph 165 contain interpretations of audit and accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 165 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 165, and therefore denies them.

166. Mr. Sambol avers that the allegations in paragraph 166 are vague and ambiguous and contain interpretations of accounting principles and guidelines as to which no response is required. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 166, and therefore denies them.

167. Mr. Sambol avers that the allegations in paragraph 167 contain interpretation of accounting principles and guidelines as to which no response is required. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 167, and therefore denies them.

168. Mr. Sambol avers that the allegations in paragraph 168 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the document referenced in paragraph 168 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent a further response is

required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 168, and therefore denies them.

169. Mr. Sambol avers that the allegations in paragraph 169 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the document referenced in paragraph 169 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol denies any allegation that Countrywide's financial statements were inconsistent with applicable accounting guidelines, and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 169, and therefore denies them.

170. Mr. Sambol avers that the document referenced in paragraph 170 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

171. Mr. Sambol avers that the document referenced in paragraph 171 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

172. Mr. Sambol avers that the document referenced in paragraph 172 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

173. Mr. Sambol denies the allegations in paragraph 173.

174. Mr. Sambol avers, on information and belief, that information regarding Countrywide's loan production and performance figures is contained, among other places, in its periodic SEC filings, refers to the filings for their

contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 174, and therefore denies them.

175. Mr. Sambol denies the allegations in paragraph 175.

176. Mr. Sambol avers that the document referenced in paragraph 176 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

177. Mr. Sambol denies the allegations in paragraph 177.

178. Mr. Sambol denies the allegations in paragraph 178.

179. Mr. Sambol denies the allegations in paragraph 179.

180. Mr. Sambol denies the allegations in paragraph 180.

181. Mr. Sambol avers that the allegations in paragraph 181 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the document referenced in paragraph 181 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 181, and therefore denies them.

182. Mr. Sambol avers that the allegations in paragraph 182 are vague and ambiguous and contain interpretations of accounting guidelines and legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

183. Mr. Sambol avers that the allegations in paragraph 183 are vague and ambiguous and contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers, on information

and belief, that information regarding Countrywide's MSRs contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 183, and therefore denies them.

184. Mr. Sambol avers that the allegations in paragraph 184 are vague and ambiguous and contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers, on information and belief, that information regarding Countrywide's MSRs is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol denies any allegation that Countrywide's financial statements were inconsistent with applicable accounting guidelines and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 184, and therefore denies them.

185. Mr. Sambol avers that the allegations in paragraph 185 are vague and ambiguous and contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers, on information and belief, that information regarding Countrywide's MSRs is contained, among other places, its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

186. Mr. Sambol denies the allegations in paragraph 186.

187. Mr. Sambol avers that the allegations in paragraph 187 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers, on information and belief, that information regarding Countrywide's R&Ws is contained, among other places, in its periodic

SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 187, and therefore denies them.

188. Mr. Sambol avers that the allegations in paragraph 188 are vague and ambiguous and contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the document referenced in paragraph 188 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

189. Mr. Sambol avers that the allegations in paragraph 189 are vague and ambiguous and contain interpretations of audit and accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 189 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 189, and therefore denies them.

190. Mr. Sambol avers that the allegations in paragraph 190 are vague and ambiguous and contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 190 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 190, and therefore denies them.

191. Mr. Sambol avers that the allegations in paragraph 191 are vague and ambiguous and contain interpretations of audit and accounting guidelines and legal

conclusions as to which no response is required. Mr. Sambol avers, on information and belief, that information regarding Countrywide's R&Ws was contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

192. Mr. Sambol denies the allegations in the first sentence of paragraph 192 and avers that the remaining allegations in paragraph 192 are not directed to Mr. Sambol and contain interpretations of accounting and auditing guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 192 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

193. Mr. Sambol avers that the allegations in paragraph 193 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that information regarding the performance of Countrywide's loan products is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 193, and therefore denies them.

194. Mr. Sambol avers that the allegations in paragraph 194 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore require no response. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 194, and therefore denies them.

195. Mr. Sambol avers that the allegations in paragraph 195 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent the allegations require a further response, they are denied.

196. Mr. Sambol avers that the allegations in paragraph 196 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 196 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 196, and therefore denies them.

197. Mr. Sambol avers that the allegations in paragraph 197 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 197 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 197, and therefore denies them.

198. Mr. Sambol avers that the allegations in paragraph 198 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 198 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 198, and therefore denies them.

199. Mr. Sambol avers that the allegations in paragraph 199 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 199 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol denies the allegations in the last sentence of paragraph 199 and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 199, and therefore denies them.

200. Mr. Sambol avers that the allegations in paragraph 200 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 200 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

201. Mr. Sambol avers that the allegations in paragraph 201 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent the allegations require a further response, they are denied.

202. Mr. Sambol avers that the allegations in paragraph 202 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 202 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

203. Mr. Sambol avers that the allegations in paragraph 203 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent the

allegations require a further response, Mr. Sambol denies any allegation that Countrywide's financial statements were inconsistent with applicable accounting guidelines and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 203, and therefore denies them.

204. Mr. Sambol avers that the allegations in paragraph 204 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 204, and therefore denies them.

205. Mr. Sambol avers that the allegations in paragraph 205 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 205 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

206. Mr. Sambol avers that the allegations in paragraph 206 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent the allegations require a further response, they are denied.

207. Mr. Sambol avers that the allegations in paragraph 207 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 207 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol denies any allegation that Countrywide's financial statements were inconsistent with

applicable accounting guidelines and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 207, and therefore denies them.

208. Mr. Sambol avers that the allegations in paragraph 208 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 208 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 208, and therefore denies them.

209. Mr. Sambol avers that the allegations in paragraph 209 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 209, and therefore denies them.

210. Mr. Sambol avers that the allegations in paragraph 210 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol denies any allegation that Countrywide's financial statements were inconsistent with applicable accounting guidelines and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 210, and therefore denies them.

211. Mr. Sambol avers that the allegations in paragraph 211 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent the

allegations require a further response, Mr. Sambol denies any allegation that Countrywide's financial statements were inconsistent with applicable accounting guidelines and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 211, and therefore denies them.

212. Mr. Sambol avers that the allegations in paragraph 212 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent a further response is required, Mr. Sambol denies any allegation that Countrywide's financial statements were inconsistent with applicable accounting guidelines and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 212, and therefore denies them.

213. Mr. Sambol avers that the allegations in paragraph 213 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent a further response is required, Mr. Sambol denies the allegations in the first sentence of paragraph 213 and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and therefore denies them.

214. Mr. Sambol avers that the allegations in paragraph 214 contain interpretations of audit and accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the documents referenced in paragraph 214 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 214, and therefore denies them.

215. Mr. Sambol avers that the allegations in paragraph 215 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and

legal conclusions and therefore no response is required. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 215, and therefore denies them.

216. Mr. Sambol avers that the allegations in paragraph 216 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 216, and therefore denies them.

217. Mr. Sambol avers that the allegations in paragraph 217 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 217 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

218. Mr. Sambol avers that the allegations in paragraph 218 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 218 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

219. Mr. Sambol avers that the allegations in paragraph 219 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 219 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol denies

any allegation that Countrywide's origination practices were improper or reckless and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 219, and therefore denies them.

220. Mr. Sambol avers that the allegations in paragraph 220 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 220 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol denies any allegation that Countrywide's financial statements were inconsistent with applicable accounting guidelines and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 220, and therefore denies them.

221. Mr. Sambol avers that the allegations in paragraph 221 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent the allegations require a further response, they are denied.

222. Mr. Sambol avers that the allegations in paragraph 222 are not directed to Mr. Sambol and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 222 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol denies any allegation that Countrywide's financial statements did not comply with applicable accounting guidelines and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 222, and therefore denies them.

223. Mr. Sambol avers, on information and belief, that information

regarding his trading of Countrywide stock is contained, among other places, in public SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol denies the allegations as they relate to him and avers that no response is required to the allegations that relate to other defendants.

224. Mr. Sambol avers that the allegations in paragraph 224 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 224, and therefore denies them.

225. Mr. Sambol denies the allegations in paragraph 225.

226. Mr. Sambol avers that the Forms 10-K referenced in paragraph 226 speak for themselves, refers to the Forms 10-K for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

227. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on July 16, 2007. Mr. Sambol avers that the press release and comments alleged in paragraph 227 speak for themselves, refers to the document and comments for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

228. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on July 24, 2007. Mr. Sambol avers that the press release referenced in paragraph 228 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol denies the remaining allegations in paragraph 228.

229. Mr. Sambol denies the allegations in paragraph 229.

230. Mr. Sambol denies the allegations in the last sentence of paragraph 230. Mr. Sambol avers that he lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in paragraph 230, and therefore denies them.

231. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on August 9, 2007. Mr. Sambol avers that the Form 10-Q referenced in paragraph 231 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

232. Mr. Sambol avers that the analyst report alleged in paragraph 232 speaks for itself, refers to the report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

233. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on August 16, 2007. Mr. Sambol avers that the press release and credit rating agency announcements referenced in paragraph 233 speak for themselves, refers to the press release and announcements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

234. Mr. Sambol avers that the allegations in paragraph 234 are vague and ambiguous and therefore no response is required. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 234 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol denies the remaining allegations in paragraph 234.

235. Mr. Sambol avers that the allegations in paragraph 235 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 235, and therefore denies them.

236. Mr. Sambol admits, on information and belief, that Countrywide

issued a press release on October 26, 2007. Mr. Sambol avers that the press release referenced in paragraph 236 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

237. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 237, and therefore denies them.

238. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. Mr. Sambol denies the remaining allegations in paragraph 238.

239. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 239, and therefore denies them.

240. Mr. Sambol avers that information regarding the Bank of America transaction is contained, among other places, in Bank of America's January 11, 2008 press release, refers to the press release for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol further avers that the financial statements referenced in paragraph 240 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol denies the remaining allegations in paragraph 240.

241. Mr. Sambol avers that the *Huffington Post* article referenced in paragraph 241 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol denies the remaining allegations in paragraph 241.

242. Mr. Sambol denies the allegations in paragraph 242.

243. Mr. Sambol avers that the allegations in the first three sentences and

the last sentence of paragraph 243 constitute legal contentions and conclusions as to which no response is required. To the extent that a response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of those allegations. Mr. Sambol admits, upon information and belief, the allegations in the fourth and fifth sentences of paragraph 243.

244. Mr. Sambol avers that the allegations in paragraph 244 constitute legal contentions and conclusions as to which no response is required. To the extent that a response is required, Mr. Sambol denies the allegations in paragraph 244.

245. Mr. Sambol avers that the statements referenced in paragraph 245 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol denies any allegation that he made any materially false or misleading statements. Mr. Sambol further avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 245, and therefore denies them.

246. Mr. Sambol avers that the statements referenced in paragraph 246 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol denies any allegation that he made any materially false or misleading statements. To the extent paragraph 246 incorporates the allegations in Sections V.B-C of the Complaint, Mr. Sambol incorporates his responses to the paragraphs in those sections. Mr. Sambol further avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 246, and therefore denies them.

247. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a January 27, 2004 conference call. Mr. Sambol avers that the statements referenced in paragraph 247 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

248. Mr. Sambol avers that the first sentence of paragraph 248 states a legal

conclusion as to which no response is required. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-K with the SEC on March 12, 2004 and that it was signed by Mr. Mozilo. To the extent the allegations require a further response, they are denied.

249. Mr. Sambol avers that the Form 10-K referenced in paragraph 249 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

250. Mr. Sambol avers that the Form 10-K referenced in paragraph 250 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

251. Mr. Sambol avers that the Form 10-K referenced in paragraph 251 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

252. Mr. Sambol avers that the allegations in paragraph 252 are not directed to Mr. Sambol, and therefore no response from Mr. Sambol is required. To the extent a response is required, Mr. Sambol avers that the Form 10-K and Sarbanes-Oxley Act Certifications referenced in paragraph 252 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

253. Mr. Sambol avers that the Form 10-K and Sarbanes-Oxley Act Certifications referenced in paragraph 253 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent paragraph 253 incorporates the allegations in Sections IV.B-E of the Complaint, Mr. Sambol incorporates his responses to the paragraphs in those sections. To the extent the allegations require a further response, they are denied.

254. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on April 21, 2004. Mr. Sambol avers that the press release referenced in paragraph 254 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

255. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at an April 21, 2004 conference call. Mr. Sambol avers that the statements referenced in paragraph 255 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

256. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at an April 21, 2004 conference call. Mr. Sambol avers that the statements referenced in paragraph 256 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

257. Mr. Sambol denies the allegations in paragraph 257.

258. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on May 7, 2004, and that Messrs. Kurland and McLaughlin signed that document. Mr. Sambol further avers that the Form 10-Q referenced in paragraph 258 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

259. Mr. Sambol avers that the Form 10-Q referenced in paragraph 259 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

260. Mr. Sambol avers that the Form 10-Q referenced in paragraph 260 speaks for itself, refers to the Form 10-Q for its contents, and denies any

characterization inconsistent with its terms. To the extent paragraph 260 incorporates the allegations in paragraph 252 of the Complaint, Mr. Sambol incorporates his responses to that paragraph.

261. Mr. Sambol denies the allegations in paragraph 261.

262. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on July 22, 2004. Mr. Sambol avers that the press release referenced in paragraph 262 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

263. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a July 22, 2004 conference call. Mr. Sambol avers that the statements referenced in paragraph 263 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

264. Mr. Sambol denies the allegations in paragraph 264.

265. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on August 6, 2004, and that Messrs. Kurland and McLaughlin signed that document. Mr. Sambol further avers that the Form 10-Q referenced in paragraph 265 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

266. Mr. Sambol avers that the Form 10-Q referenced in paragraph 266 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

267. Mr. Sambol avers that the Form 10-Q referenced in paragraph 267 speaks for itself, refers to the 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent paragraph 267 incorporates the allegations

in paragraph 252 of the Complaint, Mr. Sambol incorporates his responses to that paragraph.

268. Mr. Sambol denies the allegations in paragraph 268.

269. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a September 14, 2004 conference. Mr. Sambol avers that the statements referenced in paragraph 269 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 269, and therefore denies them.

270. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on October 20, 2004. Mr. Sambol avers that the press release referenced in paragraph 270 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

271. Mr. Sambol admits, on information and belief, that Messrs. Mozilo and Kurland made various statements at an October 20, 2004 conference call. Mr. Sambol avers that the statements referenced in paragraph 271 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

272. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at an October 20, 2004 conference call. Mr. Sambol avers that the statements referenced in paragraph 272 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 272, and therefore denies them.

273. Mr. Sambol denies the allegations in paragraph 273.

274. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on November 8, 2004, and that Messrs. Kurland and McLaughlin signed that document. Mr. Sambol further avers that the Form 10-Q referenced in paragraph 274 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

275. Mr. Sambol avers that the Form 10-Q referenced in paragraph 275 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

276. Mr. Sambol avers that the Form 10-Q referenced in paragraph 276 speaks for itself, refers to the 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent paragraph 276 incorporates the allegations in paragraph 252 of the Complaint, Mr. Sambol incorporates his responses to that paragraph.

277. Mr. Sambol denies the allegations in paragraph 277.

278. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on February 2, 2005. Mr. Sambol avers that the press release referenced in paragraph 278 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

279. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a February 2, 2005 conference call. Mr. Sambol avers that the statements referenced in paragraph 279 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of

the remaining allegations in paragraph 279, and therefore denies them.

280. Mr. Sambol denies the allegations in paragraph 280.

281. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-K with the SEC on March 15, 2005, and that Mr. Mozilo signed that document.

282. Mr. Sambol avers that the Form 10-K referenced in paragraph 282 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

283. Mr. Sambol avers that the Form 10-K referenced in paragraph 283 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

284. Mr. Sambol avers that the Form 10-K referenced in paragraph 284 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

285. Mr. Sambol avers that the allegations in paragraph 285 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

286. Mr. Sambol avers that the audit report referenced in paragraph 286 speaks for itself, refers to the audit report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 286, and therefore denies them.

287. Mr. Sambol avers that the Form 10-K referenced in paragraph 287 speaks for itself, refers to the 10-K for its contents, and denies any characterization

inconsistent with its terms. To the extent paragraph 287 incorporates the allegations in paragraph 252 of the Complaint, Mr. Sambol incorporates his responses to that paragraph.

288. Mr. Sambol denies the allegations in paragraph 288.

289. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a March 15, 2005 conference. Mr. Sambol avers that the statements referenced in paragraph 289 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 289, and therefore denies them.

290. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a March 15, 2005 conference. Mr. Sambol avers that the statements referenced in paragraph 290 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 290, and therefore denies them.

291. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a March 15, 2005 conference. Mr. Sambol avers that the statements referenced in paragraph 291 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 291, and therefore denies them.

292. Mr. Sambol denies the allegations in paragraph 292.

293. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on April 26, 2005. Mr. Sambol avers that the press release

referenced in paragraph 293 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

294. Mr. Sambol admits, on information and belief, that Messrs. Mozilo and Sieracki made various statements at an April 26, 2005 conference call. Mr. Sambol avers that the statements referenced in paragraph 294 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

295. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at an April 26, 2005 conference call. Mr. Sambol avers that the statements referenced in paragraph 295 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 295, and therefore denies them.

296. Mr. Sambol denies the allegations in paragraph 296.

297. Mr. Sambol avers that that the alleged statements made by Mr. Mozilo referenced in paragraph 297 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

298. Mr. Sambol denies the allegations in paragraph 298.

299. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on May 9, 2005, and that Messrs. Kurland and Sieracki signed that document. Mr. Sambol further avers that the Form 10-Q referenced in paragraph 299 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

300. Mr. Sambol avers that the Form 10-Q referenced in paragraph 300 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

301. Mr. Sambol avers that the Form 10-Q referenced in paragraph 301 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent paragraph 301 incorporates the allegations in paragraph 252 of the Complaint, Mr. Sambol incorporates his responses to that paragraph.

302. Mr. Sambol denies the allegations in paragraph 302.

303. Mr. Sambol admits, on information and belief, that Mr. McMurray made various statements at a May 24, 2005 analyst meeting. Mr. Sambol avers that the statements referenced in paragraph 303 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 303, and therefore denies them.

304. Mr. Sambol admits, on information and belief, that Countrywide representatives made statements at a May 24, 2005 analyst meeting. Mr. Sambol avers that the statements referenced in paragraph 304 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 304, and therefore denies them.

305. Mr. Sambol admits that he made various statements at a May 24, 2005 analyst meeting. Mr. Sambol avers that the statements referenced in paragraph 305 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a

further response, they are denied.

306. Mr. Sambol denies the allegations in paragraph 306.

307. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a June 2, 2005 conference. Mr. Sambol avers that the statements referenced in paragraph 307 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

308. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a June 2, 2005 conference. Mr. Sambol avers that the statements referenced in paragraph 308 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

309. Mr. Sambol denies the allegations in paragraph 309.

310. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on July 26, 2005. Mr. Sambol avers that the press release referenced in paragraph 310 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

311. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Sieracki, and Kurland participated in a conference call on July 26, 2005 and that Mr. Kurland made various statements at that conference call. Mr. Sambol avers that the statements referenced in paragraph 311 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

312. Mr. Sambol denies the allegations in paragraph 312 as they relate to him, and avers that to the extent such allegations are directed to the other defendants, no response is required. To the extent a response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief

as to the truth of the remaining allegations in paragraph 312, and therefore denies them.

313. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a conference call on July 26, 2005. Mr. Sambol avers that the statements referenced in paragraph 313 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

314. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a conference call on July 26, 2005. Mr. Sambol avers that the statements referenced in paragraph 314 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

315. Mr. Sambol admits, on information and belief, that Messrs. Mozilo and Sieracki made various statements at a conference call on July 26, 2005. Mr. Sambol avers that the statements referenced in paragraph 315 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

316. Mr. Sambol denies the allegations in paragraph 316.

317. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on August 8, 2005 and that Messrs. Kurland and Sieracki signed that document. Mr. Sambol avers that the Form 10-Q referenced in paragraph 317 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

318. Mr. Sambol avers that the Form 10-Q referenced in paragraph 318 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a

further response, they are denied.

319. Mr. Sambol avers that the Form 10-Q and Sarbanes-Oxley Act Certifications referenced in paragraph 319 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent paragraph 319 incorporates the allegations in paragraph 252 of the Complaint, Mr. Sambol incorporates his response to that paragraph. To the extent the allegations require a further response, they are denied.

320. Mr. Sambol denies the allegations in paragraph 320.

321. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a September 13, 2005 conference call. Mr. Sambol avers that the statements referenced in paragraph 321 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

322. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a September 13, 2005 conference call. Mr. Sambol avers that the statements referenced in paragraph 322 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

323. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a September 13, 2005 conference call. Mr. Sambol avers that the statements referenced in paragraph 323 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 323, and therefore denies them.

324. Mr. Sambol denies the allegations in paragraph 324.

325. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on October 27, 2005. Mr. Sambol avers that the press release

referenced in paragraph 325 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

326. Mr. Sambol avers that the press release referenced in paragraph 326 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

327. Mr. Sambol avers that the press release referenced in paragraph 327 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

328. Mr. Sambol admits, on information and belief, that Mr. Mozilo, made various statements at an October 27, 2005 conference call. Mr. Sambol avers that the statements referenced in paragraph 328 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

329. Mr. Sambol denies the allegations in paragraph 329.

330. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on November 8, 2005 and that Messrs. Kurland and Sieracki signed that document. Mr. Sambol avers that the Form 10-Q referenced in paragraph 330 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

331. Mr. Sambol avers that the Form 10-Q referenced in paragraph 331 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

332. Mr. Sambol avers that the Form 10-Q referenced in paragraph 332

speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

333. Mr. Sambol avers that the Form 10-Q and Sarbanes-Oxley Act Certifications referenced in paragraph 333 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent paragraph 333 incorporates the allegations in paragraph 252 of the Complaint, Mr. Sambol incorporates his response to that paragraph. To the extent the allegations require a further response, they are denied.

334. Mr. Sambol denies the allegations in paragraph 334.

335. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on January 31, 2006. Mr. Sambol avers that the press release referenced in paragraph 335 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

336. Mr. Sambol avers that the press release referenced in paragraph 336 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

337. Mr. Sambol admits, on information and belief, that Messrs. Mozilo and Sieracki participated in a conference call on January 31, 2006 and that Mr. Mozilo made various statements at that conference call. Mr. Sambol avers that the statements referenced in paragraph 337 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

338. Mr. Sambol denies the allegations in paragraph 338.

339. Mr. Sambol admits, on information and belief, that Countrywide filed its 2005 Form 10-K with the SEC on March 1, 2006 and that Mr. Mozilo signed that

document.

340. Mr. Sambol avers that the Form 10-K referenced in paragraph 340 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

341. Mr. Sambol avers that the Form 10-K referenced in paragraph 341 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

342. Mr. Sambol avers that the Form 10-K referenced in paragraph 342 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

343. Mr. Sambol avers that the Form 10-K referenced in paragraph 343 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

344. Mr. Sambol avers that the Form 10-K referenced in paragraph 344 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

345. Mr. Sambol avers that the Form 10-K referenced in paragraph 345 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

346. Mr. Sambol admits KPMG issued a report dated February 27, 2006. Mr. Sambol avers that the report referenced in paragraph 346 speaks for itself, refers to the report for its contents, and denies any characterization inconsistent with its

terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks sufficient knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 346, and therefore denies them.

347. Mr. Sambol denies the allegation that Mr. McLaughlin signed the Sarbanes-Oxley Act Certifications in the 2005 Form 10-K. Mr. Sambol avers that the Form 10-K and Sarbanes-Oxley Act Certifications referenced in paragraph 347 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent paragraph 347 incorporates the allegations in paragraph 252 of the Complaint, Mr. Sambol incorporates his response to that paragraph. To the extent the allegations require a further response, they are denied.

348. Mr. Sambol denies the allegations in paragraph 348.

349. Mr. Sambol admits, on information and belief, that Mr. Sieracki made various statements at a March 8, 2006 conference. Mr. Sambol avers that the statements referenced in paragraph 349 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

350. Mr. Sambol denies the allegations in paragraph 350.

351. Mr. Sambol admits, on information and belief, that Mr. Sieracki made various statements at a March 21, 2006 conference. Mr. Sambol avers that the statements referenced in paragraph 351 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

352. Mr. Sambol denies the allegations in paragraph 352.

353. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Kurland, Sambol, Sieracki, and Garcia participated in an investor forum on March 30, 2006 and that Mr. Sambol made various statements at that forum. Mr. Sambol avers that the statements referenced in paragraph 353 speak for themselves, refers to

the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

354. Mr. Sambol admits, on information and belief, that Mr. Garcia made various statements at a March 30, 2006 conference. Mr. Sambol avers that the statements referenced in paragraph 354 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

355. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a March 30, 2006 conference. Mr. Sambol avers that the statements referenced in paragraph 355 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

356. Mr. Sambol denies the allegations in paragraph 356.

357. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on April 27, 2006. Mr. Sambol avers that the press release referenced in paragraph 357 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

358. Mr. Sambol avers that the press release referenced in paragraph 358 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

359. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Kurland, Garcia, and Sieracki participated in a conference call on April 27, 2006. Mr. Sambol avers that the statements referenced in paragraph 359 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

360. Mr. Sambol denies the allegations in paragraph 360.

361. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on May 10, 2006 and that Messrs. Kurland and Sieracki signed that document. Mr. Sambol avers that the Form 10-Q referenced in paragraph 361 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

362. Mr. Sambol avers that the Form 10-Q referenced in paragraph 362 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

363. Mr. Sambol avers that the Form 10-Q referenced in paragraph 363 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

364. Mr. Sambol avers that the Form 10-Q and Sarbanes-Oxley Act Certifications referenced in paragraph 364 speaks for itself, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent paragraph 364 incorporates the allegations in paragraph 252 of the Complaint, Mr. Sambol incorporates his response to that paragraph. To the extent the allegations require a further response, they are denied.

365. Mr. Sambol denies the allegations in paragraph 365.

366. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a May 31, 2006 conference. Mr. Sambol avers that the statements referenced in paragraph 366 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

367. Mr. Sambol admits, on information and belief, that Mr. Mozilo made

various statements at a May 31, 2006 conference. Mr. Sambol avers that the statements referenced in paragraph 367 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

368. Mr. Sambol denies the allegations in paragraph 368.

369. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on July 25, 2006. Mr. Sambol avers that the press release referenced in paragraph 369 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

370. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Kurland, Garcia, and Sieracki participated in a conference call on July 25, 2006 and that Mr. Mozilo made various statements on that conference call. Mr. Sambol avers that the statements referenced in paragraph 370 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

371. Mr. Sambol denies the allegations in paragraph 371.

372. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on August 7, 2006 and that Messrs. Kurland and Sieracki signed that document. Mr. Sambol avers that the Form 10-Q referenced in paragraph 372 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

373. Mr. Sambol avers that the Form 10-Q referenced in paragraph 373 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

374. Mr. Sambol avers that the Form 10-Q and Sarbanes-Oxley Act

Certifications referenced in paragraph 374 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent paragraph 374 incorporates the allegations in paragraph 252 of the Complaint, Mr. Sambol incorporates his response to that paragraph. To the extent the allegations require a further response, they are denied.

375. Mr. Sambol denies the allegations in paragraph 375.

376. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Sambol, and Sieracki participated in a September 12, 2006 investor forum and that Mr. Furash made various statements at that forum. Mr. Sambol avers that the statements referenced in paragraph 376 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

377. Mr. Sambol denies the allegations in paragraph 377.

378. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Sambol, and Sieracki participated in a September 13, 2006 investor forum and that Mozilo made various statements at that forum. Mr. Sambol avers that the statements referenced in paragraph 378 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

379. Mr. Sambol avers that the alleged statements referenced in paragraph 379 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

380. Mr. Sambol admits, on information and belief, that Mr. Sieracki made various statements at a September 13, 2006 investor forum. Mr. Sambol avers that the statements referenced in paragraph 380 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

381. Mr. Sambol admits, on information and belief, that Mr. Furash made various statements at a September 13, 2006 investor forum. Mr. Sambol avers that the statements referenced in paragraph 381 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

382. Mr. Sambol admits, on information and belief, that Mr. Mozilo participated in a conference on September 13, 2006 and that Mr. Mozilo made various statements at that conference. Mr. Sambol avers that the statements referenced in paragraph 382 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

383. Mr. Sambol denies the allegations in paragraph 383.

384. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on October 24, 2006. Mr. Sambol avers that the press release referenced in paragraph 384 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

385. Mr. Sambol avers that the press release referenced in paragraph 385 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

386. Mr. Sambol avers that the press release referenced in paragraph 386 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

387. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Kurland, Garcia, and Sieracki participated in a conference call on October 24, 2006 and that Mr. Mozilo made various statements on that conference call. Mr. Sambol

avers that the statements referenced in paragraph 387 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

388. Mr. Sambol denies the allegations in paragraph 388.

389. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on November 7, 2006 and that Messrs. Sambol and Sieracki signed that document. Mr. Sambol avers that the Form 10-Q referenced in paragraph 389 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

390. Mr. Sambol avers that the Form 10-Q referenced in paragraph 390 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

391. Mr. Sambol avers that the Form 10-Q referenced in paragraph 391 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

392. Mr. Sambol avers that the Form 10-Q and Sarbanes-Oxley Act Certifications referenced in paragraph 392 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent paragraph 392 incorporates the allegations in paragraph 252 of the Complaint, Mr. Sambol incorporates his response to that paragraph. To the extent the allegations require a further response, they are denied.

393. Mr. Sambol denies the allegations in paragraph 393.

394. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on January 30, 2007. Mr. Sambol avers that the press release referenced in paragraph 394 speaks for itself, refers to the press release for its

contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

395. Mr. Sambol avers that the press release referenced in paragraph 395 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

396. Mr. Sambol avers that the press release referenced in paragraph 396 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

397. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Sambol, Garcia, and Sieracki participated in a conference call on January 30, 2007 and that Mr. Mozilo made various statements on that conference call. Mr. Sambol avers that the statements referenced in paragraph 397 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

398. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a conference call on January 30, 2007. Mr. Sambol avers that the statements referenced in paragraph 398 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

399. Mr. Sambol denies the allegations in paragraph 399.

400. Mr. Sambol admits, on information and belief, that Countrywide filed its 2006 Form 10-K with the SEC on March 1, 2007 and that Mr. Mozilo signed that document. Mr. Sambol avers that the Form 10-K referenced in paragraph 400 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

401. Mr. Sambol avers that the Form 10-K referenced in paragraph 401 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

402. Mr. Sambol avers that the Form 10-K referenced in paragraph 402 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

403. Mr. Sambol avers that Form 10-K referenced in paragraph 403 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

404. Mr. Sambol avers that the Form 10-K referenced in paragraph 404 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

405. Mr. Sambol avers that the Form 10-K referenced in paragraph 405 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

406. Mr. Sambol avers that the Form 10-K referenced in paragraph 406 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

407. Mr. Sambol avers that the Form 10-K referenced in paragraph 407 speaks for itself, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

408. Mr. Sambol admits, on information and belief, that KPMG issued a report dated February 28, 2007. Mr. Sambol avers that the report referenced in paragraph 408 speaks for itself, refers to the report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 408, and therefore denies them.

409. Mr. Sambol denies the allegation that Mr. McLaughlin signed the Sarbanes-Oxley Act Certifications in the 2005 Form 10-K. Mr. Sambol avers that the 2005 Form 10-K and Sarbanes-Oxley Act Certifications referenced in paragraph 409 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent paragraph 409 incorporates the allegations in paragraph 252 of the Complaint, Mr. Sambol incorporates his responses to the paragraphs to that paragraph. To the extent the allegations require a further response, they are denied.

410. Mr. Sambol denies the allegations in paragraph 410.

411. Mr. Sambol admits, on information and belief, that Mr. Sieracki made various statements at a March 6, 2007 conference. Mr. Sambol avers that the statements referenced in paragraph 411 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

412. Mr. Sambol admits, on information and belief, that Mr. Sieracki made various statements at a March 6, 2007 conference. Mr. Sambol avers that the statements referenced in paragraph 412 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

413. Mr. Sambol admits, on information and belief, that Mr. Sieracki

made various statements at a March 7, 2007 conference. Mr. Sambol avers that the statements referenced in paragraph 413 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

414. Mr. Sambol denies the allegations in paragraph 414.

415. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements during a March 2007 interview with CNBC reporter Maria Bartiromo. Mr. Sambol avers that the statements referenced in paragraph 415 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 415, and therefore denies them.

416. Mr. Sambol denies the allegations in paragraph 416.

417. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on April 26, 2007. Mr. Sambol avers that the press release referenced in paragraph 417 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

418. Mr. Sambol avers that the press release referenced in paragraph 418 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

419. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at an April 26, 2007 conference call. Mr. Sambol avers that the statements referenced in paragraph 419 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their

terms. To the extent the allegations require a further response, they are denied.

420. Mr. Sambol admits that he made various statements at an April 26, 2007 conference call. Mr. Sambol avers that the statements referenced in paragraph 420 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms.

421. Mr. Sambol denies the allegations in paragraph 421.

422. Mr. Sambol admits, on information and belief, that a company representative made various statements at an April 26, 2007 conference. Mr. Sambol avers that the statements referenced in paragraph 422 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 422, and therefore denies them.

423. Mr. Sambol avers that the statements referenced in paragraph 423 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 423, and therefore denies them.

424. Mr. Sambol avers that the statements referenced in paragraph 424 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 424, and therefore denies them.

425. Mr. Sambol avers that the statements referenced in paragraph 425 speak for themselves, refers to the statements for their contents, and denies any

characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 425, and therefore denies them.

426. Mr. Sambol denies the allegations in paragraph 426.

427. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on May 9, 2007, and that Messrs. Sambol and Sieracki signed that document. Mr. Sambol further avers that the Form 10-Q referenced in paragraph 427 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

428. Mr. Sambol avers that the Form 10-Q referenced in paragraph 428 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

429. Mr. Sambol avers that the Form 10-Q referenced in paragraph 429 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

430. Mr. Sambol avers that the Form 10-Q referenced in paragraph 430 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

431. Mr. Sambol avers that the Form 10-Q referenced in paragraph 431 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent paragraph 431 incorporates the allegations in paragraph 252 of the Complaint, Mr. Sambol incorporates his responses to that paragraph. To the extent the allegations require a

further response, they are denied.

432. Mr. Sambol denies the allegations in paragraph 432.

433. Mr. Sambol denies the allegations in paragraph 433.

434. Mr. Sambol denies the allegations in paragraph 434.

435. Mr. Sambol avers that the allegations in paragraph 435 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

436. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on July 16, 2007, and that press release quoted Mr. Sambol. Mr. Sambol avers that the press release referenced in paragraph 436 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

437. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 437, and therefore denies them.

438. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 438, and therefore denies them.

439. Mr. Sambol denies the allegations in paragraph 439.

440. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on July 24, 2007. Mr. Sambol avers that the press release referenced in paragraph 440 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

441. Mr. Sambol avers that the press release referenced in paragraph 441 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a

further response, they are denied.

442. Mr. Sambol admits, on information and belief, that Countrywide representatives made various statements at a July 24, 2007 conference call. Mr. Sambol avers that the statements referenced in paragraph 442 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

443. Mr. Sambol avers that the statements made during the July 24, 2007 conference call referenced in paragraph 443 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol further avers that he lacks knowledge or information sufficient to form a belief as to the allegations in the second sentence of paragraph 443, and therefore denies them. To the extent the allegations require a further response, they are denied.

444. Mr. Sambol admits, on information and belief, that Messrs. Sambol and McMurray made various statements at a July 24, 2007 conference call. Mr. Sambol avers that the statements referenced in paragraph 444 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

445. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 445, and therefore denies them. Mr. Sambol avers that the testimony referenced in paragraph 445 speaks for itself, refers to the testimony for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

446. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. Mr.

Sambol denies the remaining allegations in paragraph 446.

447. Mr. Sambol denies the allegations in paragraph 447.

448. Mr. Sambol denies the allegations in paragraph 448.

449. Mr. Sambol denies the allegations in paragraph 449.

450. Mr. Sambol avers that the earnings release referenced in paragraph 450 speaks for itself, refers to the release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

451. Mr. Sambol admits, on information and belief, that Messrs. Mozilo and Sambol made various statements at a July 24, 2007 conference call. Mr. Sambol avers that the statements referenced in paragraph 451 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

452. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a July 24, 2007 conference call. Mr. Sambol avers that the statements referenced in paragraph 452 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 452, and therefore denies them.

453. Mr. Sambol admits, on information and belief, that Mr. Sieracki made various statements at a July 24, 2007 conference call. Mr. Sambol avers that the statements referenced in paragraph 453 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 453, and therefore denies them.

454. Mr. Sambol denies the allegations in paragraph 454.

455. Mr. Sambol lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of paragraph 455, and therefore denies them. Mr. Sambol denies the remaining allegations in paragraph 455.

456. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on August 2, 2007. Mr. Sambol avers that the press release referenced in paragraph 456 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

457. Mr. Sambol denies the allegations in paragraph 457.

458. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' belief. Mr. Sambol denies the remaining allegations in paragraph 458.

459. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the market's alleged concerns. Mr. Sambol denies the remaining allegations in paragraph 459.

460. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. Mr. Sambol denies the remaining allegations in paragraph 460.

461. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on August 9, 2007. Mr. Sambol avers that the Form 10-Q referenced in paragraph 461 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

462. Mr. Sambol admits, on information and belief, that Merrill Lynch issued an analyst report on August 13, 2007. Mr. Sambol avers that the analyst report referenced in paragraph 462 speaks for itself, refers to the report for its

contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

463. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. Mr. Sambol denies the remaining allegations in paragraph 463.

464. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on August 9, 2007. Mr. Sambol avers that the Form 10-Q referenced in paragraph 464 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

465. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on August 9, 2007. Mr. Sambol avers that the Form 10-Q referenced in paragraph 465 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

466. Mr. Sambol avers that the Form 10-Q referenced in paragraph 466 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent paragraph 466 incorporates the allegations in paragraph 252 of the Complaint, Mr. Sambol incorporates his responses to that paragraph. Mr. Sambol denies the remaining allegations in paragraph 466.

467. Mr. Sambol avers that the Form 10-Q referenced in paragraph 467 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

468. Mr. Sambol denies the allegations in paragraph 468.

469. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on August 14, 2007. Mr. Sambol avers that the press release

referenced in paragraph 469 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

470. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 470. Mr. Sambol avers that the *Los Angeles Times* article referenced in paragraph 470 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

471. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. Mr. Sambol denies the remaining allegations in paragraph 471.

472. Mr. Sambol avers that the Merrill Lynch analyst report and *Wall Street Journal* article referenced in paragraph 472 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 472, and therefore denies them.

473. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. Mr. Sambol denies the remaining allegations in paragraph 473.

474. Mr. Sambol denies the allegations in paragraph 474.

475. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on August 16, 2007. Mr. Sambol avers that the press release referenced in paragraph 475 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in paragraph 475, and therefore denies them.

476. Mr. Sambol denies the allegations in paragraph 476.

477. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

478. Mr. Sambol denies the allegations in paragraph 478.

479. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on August 22, 2007. Mr. Sambol avers that the press release referenced in paragraph 479 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

480. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements during an August 23, 2007 interview with CNBC reporter Maria Bartiromo. Mr. Sambol avers that the statements referenced in paragraph 480 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 480, and therefore denies them.

481. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements during an August 23, 2007 interview with Fox News reporter Neil Cavuto. Mr. Sambol avers that the statements referenced in paragraph 481 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

482. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements during an August 23, 2007 interview with Fox News reporter Neil Cavuto. Mr. Sambol avers that the statements referenced in paragraph 482

speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

483. Mr. Sambol denies the allegations in paragraph 483.

484. Mr. Sambol admits, on information and belief, that Fitch Ratings issued a press release on August 24, 2007. Mr. Sambol avers that the press release referenced in paragraph 484 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

485. Mr. Sambol denies the allegations in paragraph 485.

486. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

487. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on September 7, 2007. Mr. Sambol avers that the press release referenced in paragraph 487 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

488. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 488, and therefore denies them.

489. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. Mr. Sambol denies the remaining allegations in paragraph 489.

490. Mr. Sambol denies the allegations in paragraph 490.

491. Mr. Sambol avers that the *New York Post* article referenced in paragraph 491 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a

further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 491, and therefore denies them.

492. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. Mr. Sambol denies the remaining allegations in paragraph 492.

493. Mr. Sambol avers that the *New York Times* article referenced in paragraph 493 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 493, and therefore denies them.

494. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. Mr. Sambol denies the remaining allegations in paragraph 494.

495. Mr. Sambol avers that the media reports referenced in paragraph 495 speak for themselves, refers to the reports for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 495, and therefore denies them.

496. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 496 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

497. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 497 speaks for itself, refers to the article for its contents, and denies any

characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 497, and therefore denies them.

498. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 498 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 498, and therefore denies them.

499. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 499 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 499, and therefore denies them.

500. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

501. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on October 26, 2007. Mr. Sambol avers that the press release referenced in paragraph 501 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

502. Mr. Sambol avers that the press release and the statements in the conference call referenced in paragraph 502 speak for themselves, refers to the press release and statements for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that Countrywide's stock price is a

matter of public record and denies any characterization inconsistent with the public record. Mr. Sambol denies the remaining allegations in paragraph 502.

503. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on November 9, 2007. To the extent the allegations require a further response, they are denied.

504. Mr. Sambol avers that the Form 10-Q referenced in paragraph 504 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

505. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 505, and therefore denies them.

506. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. Mr. Sambol further avers that the allegations in the second sentence of paragraph 506 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

507. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 507, and therefore denies them.

508. Mr. Sambol denies the allegations in paragraph 508.

509. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

510. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 510 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a

further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 510, and therefore denies them.

511. Mr. Sambol avers that the letter by Senator Charles E. Schumer referenced in paragraph 511 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

512. Mr. Sambol avers that the press release by Senator Schumer's office referenced in paragraph 512 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

513. Mr. Sambol avers that the press release by Senator Schumer's office referenced in paragraph 513 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

514. Mr. Sambol denies the allegations in paragraph 514.

515. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

516. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on January 11, 2008 announcing an agreement reached with Bank of America. Mr. Sambol avers that the press release referenced in paragraph 516 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

517. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on January 29, 2008. Mr. Sambol avers that the press release referenced in paragraph 517 speaks for itself, refers to the press release for its

contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

518. Mr. Sambol avers that the SEC civil action referenced in paragraph 518 speaks for itself, refers to the complaint for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

519. Mr. Sambol avers that the SEC press release referenced in paragraph 519 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

520. Mr. Sambol avers that the SEC press release referenced in paragraph 520 speaks for itself, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

521. Mr. Sambol denies the allegations in paragraph 521.

522. Mr. Sambol denies the allegations in paragraph 522.

523. Mr. Sambol denies the allegations in paragraph 523.

524. Mr. Sambol denies the allegations in paragraph 524.

525. Mr. Sambol denies the allegations in paragraph 525.

526. Mr. Sambol avers that the allegations in paragraph 526 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

527. Mr. Sambol incorporates by reference his responses to each and every allegation above as if fully set forth herein.

528. Mr. Sambol avers that paragraph 528 contains characterizations of the Complaint as to which no response is required. To the extent the allegations require a further response, they are denied.

529. Mr. Sambol denies the allegations in paragraph 529.

530. Mr. Sambol avers that the allegations in paragraph 530 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

531. Mr. Sambol denies the allegations in paragraph 531.

532. Mr. Sambol denies the allegations in paragraph 532.

533. Mr. Sambol denies the allegations in paragraph 533.

534. Mr. Sambol avers that the allegations in paragraph 534 are not directed to him and contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

535. Mr. Sambol denies the allegations in paragraph 535.

536. Mr. Sambol denies the allegations in paragraph 536.

537. Mr. Sambol denies the allegations in paragraph 537.

538. Mr. Sambol avers that the allegations in paragraph 538 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

539. Mr. Sambol avers that the allegations in paragraph 539 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

540. Mr. Sambol avers that the allegations in paragraph 540 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

541. Mr. Sambol denies the allegations in paragraph 541.

542. Mr. Sambol denies the allegations in paragraph 542.

543. Mr. Sambol incorporates by reference his responses to each and every allegation above as if fully set forth herein.

544. Mr. Sambol avers that the allegations in paragraph 544 are not directed to him, and therefore no response is required. To the extent the allegations require a further response, they are denied.

545. Mr. Sambol avers that the allegations in paragraph 545 are not directed to him and contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

546. Mr. Sambol avers that the allegations in paragraph 546 are not directed to him and contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

547. Mr. Sambol avers that the allegations in paragraph 547 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol admits that he participated in the conduct of Countrywide's business affairs, and denies the remaining allegations in paragraph 547.

548. Mr. Sambol avers that the allegations in paragraph 548 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

549. Mr. Sambol avers that the allegations in paragraph 549 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

550. Mr. Sambol avers that the allegations in paragraph 550 are not directed to him, and therefore no response is required. To the extent the allegations require a further response, they are denied.

551. Mr. Sambol avers that the allegations in paragraph 551 are not directed to him and contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

552. Mr. Sambol avers that the allegations in paragraph 552 are not directed to him and contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

553. Mr. Sambol denies the allegations in paragraph 553.

554. Mr. Sambol denies the allegations in paragraph 554.

555. Mr. Sambol does not answer paragraph 555 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

556. Mr. Sambol does not answer paragraph 556 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

557. Mr. Sambol does not answer paragraph 557 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

558. Mr. Sambol does not answer paragraph 558 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

559. Mr. Sambol does not answer paragraph 559 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

560. Mr. Sambol does not answer paragraph 560 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

561. Mr. Sambol does not answer paragraph 561 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

562. Mr. Sambol does not answer paragraph 562 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

563. Mr. Sambol does not answer paragraph 563 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

564. Mr. Sambol does not answer paragraph 564 because an answer is not

required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

565. Mr. Sambol does not answer paragraph 565 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

566. Mr. Sambol does not answer paragraph 566 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

567. Mr. Sambol does not answer paragraph 567 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

568. Mr. Sambol does not answer paragraph 568 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

569. Mr. Sambol does not answer paragraph 569 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

570. Mr. Sambol does not answer paragraph 570 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

571. Mr. Sambol does not answer paragraph 571 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

572. Mr. Sambol does not answer paragraph 572 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

573. Mr. Sambol does not answer paragraph 573 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this

cause of action.

574. Mr. Sambol does not answer paragraph 574 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

575. Mr. Sambol does not answer paragraph 575 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

576. Mr. Sambol does not answer paragraph 576 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

577. Mr. Sambol does not answer paragraph 577 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

578. Mr. Sambol does not answer paragraph 578 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

579. Mr. Sambol does not answer paragraph 579 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

580. Mr. Sambol does not answer paragraph 580 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

* * *

AFFIRMATIVE DEFENSES

As separate and distinct affirmative defenses to the Complaint, Mr. Sambol alleges the following affirmative defenses. In setting forth these affirmative defenses, Mr. Sambol does not assume any burden of proof not otherwise imposed upon him by law.

FIRST AFFIRMATIVE DEFENSE

(Lack of Standing)

This action is barred, in whole or in part, because Plaintiffs lack standing to assert the claims set forth in the Complaint.

SECOND AFFIRMATIVE DEFENSE

(Failure to State a Claim)

The Complaint, and each cause of action alleged therein against Mr. Sambol, fails to state a claim upon which relief can be granted.

THIRD AFFIRMATIVE DEFENSE

(Failure to Plead Fraud with Particularity)

This action is barred, in whole or in part, because Plaintiffs have failed to plead fraud with the specificity required by the Private Securities Litigation Reform Act, Rule 9(b) of the Federal Rules of Civil Procedure, and any other applicable rules governing the specificity of pleading.

FOURTH AFFIRMATIVE DEFENSE

(Lack of Actionable Misstatement or Omission)

This action is barred, in whole or in part, because none of the misstatements or omissions alleged in the Complaint were, in fact, false or misleading in any way.

FIFTH AFFIRMATIVE DEFENSE

(Lack of Scienter and/or Intent)

This action is barred, in whole or in part, because Mr. Sambol did not act with the requisite scienter. Mr. Sambol did not make any of the alleged misstatements or omissions in the Complaint with the intent to deceive and/or for the purpose of inducing the purchase or sale of Countrywide securities by the named plaintiffs. Mr. Sambol is not liable for Plaintiffs' claims because he did not know, and could not have known with the exercise of reasonable care, the untruth of any alleged misrepresentations or the fact of any material omission.

SIXTH AFFIRMATIVE DEFENSE

(No Awareness of Facts Indicating Falsity)

Plaintiffs' claims are barred, in whole or in part, because Mr. Sambol at no time was aware of facts indicating a probability that statements being made by Mr. Sambol to the investing public were materially incorrect, incomplete or otherwise misleading.

SEVENTH AFFIRMATIVE DEFENSE

(No Negligence)

At all relevant times, Mr. Sambol did not act with negligence.

EIGHTH AFFIRMATIVE DEFENSE

(Due Diligence and Reasonable Investigation)

This action is barred, in whole or in part, because each and every act and omission by Mr. Sambol in connection with the offering of the subject securities was made after reasonable investigation, and Mr. Sambol had reasonable grounds to believe, and did believe, that such acts or omissions were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

NINTH AFFIRMATIVE DEFENSE

(Good Faith)

This action is barred, in whole or in part, because the acts, statements, and omissions alleged in the Complaint were made in good faith, honestly, and without any recklessness or intent to deceive. Mr. Sambol acted at all times innocently and without knowledge of purported falsity. Facts contemporaneous with the allegedly fraudulent acts, statements, and omissions indicate that such acts, statements, and omissions were the product of reasonable business judgment.

Every act or omission alleged against Mr. Sambol in the Complaint was done or omitted in good faith conformity with the rules and regulations of the Securities and Exchange Commission, and therefore, pursuant to Section 23(a) of the

Securities Exchange Act of 1934, there is no liability for any act or omission so alleged.

TENTH AFFIRMATIVE DEFENSE

(Lack of Injury to Plaintiffs)

This action is barred, in whole or in part, because Plaintiffs have not suffered any legally cognizable injury or damage.

ELEVENTH AFFIRMATIVE DEFENSE

(Lack of Materiality)

This action is barred, in whole or in part, because the allegedly untrue statements of fact and omissions of fact were immaterial as a matter of law.

TWELFTH AFFIRMATIVE DEFENSE

(Material Information Was Disclosed)

Plaintiffs' claims, including all statements or business decisions that are construed by the Complaint as being false, misleading and/or omissions of material information, are barred, in whole or in part, because Plaintiffs and the market were informed of the material information and risks associated with their investments in SEC filings and their amendments, press releases, proxy statements, Registration Statements, advertisements and other materials available to plaintiffs and/or the market.

This action is further barred, in whole or in part, because to the extent Mr. Sambol allegedly had a duty to disclose, this information was in fact disclosed.

THIRTEENTH AFFIRMATIVE DEFENSE

(No Duty to Disclose)

This action is barred, in whole or in part, because at all relevant times Mr. Sambol had no duty to disclose the allegedly omitted information.

FOURTEENTH AFFIRMATIVE DEFENSE

(No Duty to Revise/Update/Correct)

This action is barred, in whole or in part, because Mr. Sambol was under no duty to revise, update, and/or correct any previously made statements that Plaintiffs allege were not subsequently revised, updated and/or corrected.

FIFTEENTH AFFIRMATIVE DEFENSE

(Failure to Mitigate)

This action is barred, in whole or in part, because plaintiffs failed to make reasonable efforts to mitigate any injury or damages they may have suffered and could have prevented such injury or damages.

SIXTEENTH AFFIRMATIVE DEFENSE

(Contributory Negligence, Comparative Negligence, and Assumption of Risk)

This action is barred, in whole or in part, by the doctrines of comparative negligence, contributory negligence, and/or assumption of risk. Plaintiffs knew, or in the exercise of reasonable care should have known, the risks in investing in Countrywide securities and thus assumed the risk of a decline in the value of their securities. Plaintiffs' claims are barred, in whole or in part, because Plaintiffs had actual or constructive knowledge of the alleged misstatements or omissions set forth in the Complaint at the time they purchased their securities and thus assumed the risk of a decline in their value.

SEVENTEENTH AFFIRMATIVE DEFENSE

(Safe Harbor Protection)

This action is barred, in whole or in part, to the extent any misrepresentations or omissions alleged in the Complaint are forward-looking statements falling within the statutory "safe-harbor" provisions set forth in the Private Securities Litigation Reform Act of 1995, including 15 U.S.C. §78u-5(c) and 15 U.S.C. §77z-2.

EIGHTEENTH AFFIRMATIVE DEFENSE

(Bespeaks Caution)

This action is barred, in whole or in part, based on the express disclosures in Countrywide's public statements regarding material facts and risks concerning Countrywide's securities. Such statements contained sufficient cautionary language and risk disclosures to bespeak caution and warn plaintiffs, prior to investing, of the risks of investing in Countrywide securities.

NINETEENTH AFFIRMATIVE DEFENSE

(Disclosure of Risk)

This action is barred, in whole or in part, because Plaintiffs and the market were informed of the risks associated with their investments in Form 10-Qs and their amendments, Forms 10-K and their amendments, other SEC filings, press releases, proxy statements, Registration Statements, advertisements, and material incorporated therein or was otherwise publicly disclosed or available to Plaintiffs and the market through credible sources.

TWENTIETH AFFIRMATIVE DEFENSE

(Knowledge)

This action is barred, in whole or in part, because at the time of the securities transactions alleged in the Complaint, Plaintiffs knew the true facts concerning the matters alleged in the Complaint. Plaintiffs would have purchased Countrywide securities even with full knowledge of the facts that they allege were misrepresented or omitted.

TWENTY-FIRST AFFIRMATIVE DEFENSE

(Lack of Reasonable Reliance)

This action is barred, in whole or in part, because Plaintiffs did not reasonably rely on any of the statements, acts, or omissions alleged in the Complaint in deciding to purchase Countrywide securities.

This action is barred, in whole or in part, because Plaintiffs did not reasonably rely on the market price or the integrity of the market price of Countrywide securities in deciding to purchase Countrywide securities.

TWENTY-SECOND AFFIRMATIVE DEFENSE

(Lack of Actual Reliance)

This action is barred, in whole or in part, because Plaintiffs did not actually rely on any of the statements, acts, or omissions alleged in the Complaint in deciding to purchase Countrywide securities.

This action is barred, in whole or in part, because Plaintiffs did not rely on the integrity of the market price of Countrywide securities in deciding to purchase Countrywide securities.

TWENTY-THIRD AFFIRMATIVE DEFENSE

(No Fraud on the Market)

The fraud on the market theory is not applicable and/or is not a basis of liability with respect to one or more of the claims alleged in this action.

TWENTY-FOURTH AFFIRMATIVE DEFENSE

(Lack of Loss Causation)

This action is barred, in whole or in part, because of the absence of loss causation. Plaintiffs' injuries or damages, to the extent they exist, were caused by intervening and/or supervening events unconnected to Mr. Sambol and the allegations in this complaint, including macroeconomic and mortgage-industry events that constrained Countrywide's access to the credit and capital markets and affected its liquidity.

TWENTY-FIFTH AFFIRMATIVE DEFENSE

(No Causation)

Plaintiffs are not entitled to any recovery from Mr. Sambol because no act or omission of Mr. Sambol was the cause in fact or the proximate cause of any damage to plaintiffs.

<u>TWENTY-SIXTH AFFIRMATIVE DEFENSE</u>

(Intervening or Superseding Cause)

This action is barred, in whole or in part, because Plaintiffs' alleged damages, if any, were the result of one or more intervening or superseding causes or caused by the acts and/or failures to act of persons and/or entities other than Mr. Sambol, and were not the result of any act or omission on the part of Mr. Sambol.

<u>TWENTY-SEVENTH AFFIRMATIVE DEFENSE</u>

(Conduct of Others)

This action is barred, in whole or in part, to the extent plaintiffs purport to hold Mr. Sambol responsible for alleged material misrepresentations made, or conduct engaged in, by third parties or other defendants.

<u>TWENTY-EIGHTH AFFIRMATIVE DEFENSE</u>

(Vague, Ambiguous and Uncertain)

This action is barred, in whole or in part, because Plaintiffs' alleged claims against Mr. Sambol are vague, ambiguous and uncertain.

<u>TWENTY-NINTH AFFIRMATIVE DEFENSE</u>

(Laches, Waiver, *In Pari Delicto*, Unclean Hands)

This action is barred, in whole or in part, by the doctrines of laches, waiver, *in pari delicto* and/or unclean hands.

<u>THIRTIETH AFFIRMATIVE DEFENSE</u>

(Estoppel)

By their words, actions and failures to act, Plaintiffs are equitably estopped from asserting each of the purported causes of action alleged in the Complaint and/or from obtaining any of the relief sought thereby.

THIRTY-FIRST AFFIRMATIVE DEFENSE

(Consent, Approval, Acquiescence, Participation, Ratification)

This action is barred, in whole or in part, because of Plaintiffs' own consent, approval, acquiescence, participation and/or ratification at any time in any activity that plaintiffs challenge as improper.

THIRTY-SECOND AFFIRMATIVE DEFENSE

(Statute of Limitations)

This action is barred, in whole or in part, because of the applicable statute(s) of limitations and/or period(s) of repose.

THIRTY-THIRD AFFIRMATIVE DEFENSE

(Reliance on Others)

This action is barred, in whole or in part, because every statement, act, or omission by Mr. Sambol alleged in the Complaint, if it occurred at all, was made or occurred in reasonable good faith reliance on the statements and representations of others upon which Mr. Sambol was entitled to rely.

THIRTY-FOURTH AFFIRMATIVE DEFENSE

(Indemnification, Contribution and Proportionate Liability)

Without in any way admitting that Plaintiffs have suffered any loss as alleged in the Complaint, to the extent any loss has been sustained, Mr. Sambol is entitled to indemnification and/or contribution from others, named or unnamed in this action, relating to such alleged losses. Further, under the Private Securities Litigation Reform Act of 1995, any judgment against Mr. Sambol must be in strict proportion to the percentage of fault, if any, assigned to Mr. Sambol, and any alleged liability of Mr. Sambol should be reduced accordingly.

THIRTY-FIFTH AFFIRMATIVE DEFENSE

(Apportionment)

Without admitting that Plaintiffs suffered damages in any amount, or that Mr. Sambol or any defendant is or should be liable for any such damages, Mr.

Sambol asserts that his liability and the liability of any other responsible persons, named or unnamed, should be apportioned according to their relative degrees of fault, and any alleged liability of Mr. Sambol should be reduced accordingly.

THIRTY-SIXTH AFFIRMATIVE DEFENSE

(Unjust Enrichment)

This action is barred, in whole or in part, because Plaintiffs would be unjustly enriched if they were allowed to recover in this action.

Furthermore, without admitting that Plaintiffs have suffered any loss as a result of an act or omission alleged in the Complaint, any damages awarded in connection with the claims asserted in this action are offset and/or must be reduced by the amount of the tax benefits accruing to plaintiffs by virtue of their deduction of capital loss or other amounts received in connection with the securities, in order to prevent unjust enrichment of those individuals.

THIRTY-SEVENTH AFFIRMATIVE DEFENSE

(Control Person Defenses)

This action is barred, in whole or in part, because Defendants did not directly or indirectly induce the act or acts constituting the alleged violations and claims under Section 20(a) of the Securities Exchange Act of 1934. Each and every one of the Defendants alleged to be a control person under Section 20(a) of the Securities Exchange Act acted in good faith under 15 U.S.C. §78t(a).

Each and every one of the Defendants had no knowledge of or reasonable grounds to believe in the existence of facts by reason of which the liability of the control persons is alleged to exist under Section 15 of the Securities Act of 1933, 15 U.S.C. §77o.

Plaintiffs' claims are also barred because Plaintiffs cannot establish the primary liability necessary to assert a control person liability claim.

THIRTY-EIGHTH AFFIRMATIVE DEFENSE

(Speculative Damages)

This action is barred, in whole or in part, because the alleged damages, if any, are speculative.

THIRTY-NINTH AFFIRMATIVE DEFENSE

(SEC Rule 10b5-1)

This action is barred, in whole or in part, by SEC Rule 10b5-l.

FORTIETH AFFIRMATIVE DEFENSE

(No Entitlement to Compensatory Damages)

Plaintiffs are not entitled to recover the compensatory damages requested in the Complaint.

FORTY-FIRST AFFIRMATIVE DEFENSE

(No Entitlement to Exemplary or Punitive Damages)

Plaintiffs are precluded from recovering exemplary or punitive damages, either in whole or in part, from Mr. Sambol under the applicable provisions of the law, including, without limitation, California Civil Code section 3294, the United States Constitution and/or the California Constitution.

FORTY-SECOND AFFIRMATIVE DEFENSE

(No Entitlement to Costs of Litigation)

Plaintiffs are not entitled to recover their costs and expenses incurred in this action, including without limitation, attorneys' fees, from Mr. Sambol.

FORTY-THIRD AFFIRMATIVE DEFENSE

(No Entitlement to Prejudgment Interest)

Plaintiffs are precluded from recovering prejudgment interest from Mr. Sambol because such a recovery is not liquidated nor ascertainable and is not otherwise statutorily prescribed.

FORTY-FOURTH AFFIRMATIVE DEFENSE

(Statutory Defenses)

This action is barred, in whole or in part, by virtue of statutory defenses, including, but not limited to, 15 U.S.C. §78u-4(b)(1)-(2), 15 U.S.C. §78t(a), 15 U.S.C. §77m, or the governing local laws of this jurisdiction.

FORTY-FIFTH AFFIRMATIVE DEFENSE

(15 U.S.C. §77k(e))

This action is barred, in whole or in part, by the provisions of Section 11(e) of the Securities Act of 1933, 15 U.S.C. §77k(e).

FORTY-SIXTH AFFIRMATIVE DEFENSE

(Reservation of Rights)

Answers to each paragraph of the Complaint are made by Mr. Sambol without waiving, but expressly reserving, all rights Mr. Sambol may have to seek relief by appropriate motions directed to the allegations in the Complaint.

FORTY-SEVENTH AFFIRMATIVE DEFENSE

(Incorporation of Other Defendants' Defenses)

The action is barred, in whole or in part, by each of the affirmative defenses asserted by each of the other Defendants to the extent such defense is available to Mr. Sambol, and each such defense is incorporated herein by reference.

FORTY-EIGHTH AFFIRMATIVE DEFENSE

(Claim and Issue Preclusion)

Plaintiff's claims are barred, in whole or in part, by claim and/or issue preclusion.

FORTY-NINTH AFFIRMATIVE DEFENSE

(No Ultimate Authority)

Plaintiffs' claims are barred, in whole or in part, because Mr. Sambol did not have ultimate authority over the content of statements alleged in the Complaint and whether and how to communicate those statements.

FIFTIETH AFFIRMATIVE DEFENSE

(Failure to State a Claim)

Plaintiffs' claim under Section 18 of the Securities Exchange Act of 1934 is barred to the extent it is based on alleged misstatements other than those contained in Countrywide Financial Corporation's Form 10K Filings.

FIFTY-FIRST AFFIRMATIVE DEFENSE

(No Reliance)

Plaintiffs' claim under Section 18 of the Securities Exchange Act of 1934 is barred because Plaintiffs did not purchase securities after any actionable alleged misstatement by Mr. Sambol.

* * *

WHEREFORE, Mr. Sambol prays for judgment as follows:

1. That Plaintiffs take nothing by their Complaint and that the Complaint be dismissed with prejudice;

2. That judgment be entered in favor of Mr. Sambol and against Plaintiffs with respect to all causes of action in the Complaint directed to him.

3. Mr. Sambol be awarded his costs of suit and expenses incurred in defending this action; and

4. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Defendant David Sambol hereby demands a jury trial.

Dated: October 14, 2011

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *\/s/ Michael C. Tu*
Michael C. Tu

Attorneys for Defendant David Sambol